# The Allegheny Bank's Appeal.

*Power of court to control funds deposited in bank by late sheriff.—Bank not subject to rule of court or attachment as for contempt.—Who are subject to rule and attachment.*

1. A court on whose execution a sheriff has sold lands of a defendant and deposited the proceeds in bank, to the credit of his account as sheriff, cannot, after his death, rule the bank to pay the proceeds into court for the purpose of distribution.

2. The successor in office of a deceased sheriff is the proper party to demand and receive the money from the bank; and the proper course is to rule him to pay it into court or to the plaintiff in the writ.

3. Outside parties who, by legal process, official position, or otherwise, are not in court and subject to its jurisdiction, are to be acted upon only by the ordinary process of law.

4. A bank is such an outside party; and such a rule upon it is null and void for want of jurisdiction, and may be restrained by injunction, or reversed upon appeal, or be disregarded as incapable of execution.

5. But if a bank submits to the rule and pays the money into court, and the court makes decree of distribution, it cannot appeal from that decree, having no interest in the distribution.

APPEAL from the District Court of *Allegheny county.*

This was an appeal by the Allegheny Bank from the decree of the court below.

The whole case is stated in the opinion of this court.

*Shiras,* for appellant.

*Shaler, Lowrie,* and *MacConnell,* for appellee.

The opinion of the court was delivered by

WOODWARD, C. J.—Harry Woods, late sheriff of Allegheny county, died in the midst of his official term, leaving on deposit in the Allegheny Bank, to his credit as sheriff, the sum of $30,667.93. He kept two accounts in the bank, one in his name as sheriff which showed the above balance, and the other in his name without his official title, which was a much smaller account, and which has not been exhibited to us.

At the time of his death, Sheriff Woods had in his hands, unreturned, a writ of *venditioni exponas,* issued on a judgment of George Kirkpatrick *v.* Catharine Lorenz, No. 76, January Term 1863, for a debt of $30,000. From a return of said writ made by his successor in office, Sheriff Stewart, it appeared that Sheriff Woods had sold various parcels of real estate to several parties by virtue of said writ, that some of the bids had been paid, and that in two instances he had made deeds to the purchasers, one to C. Hanson Love, from whom he had received $12,600, the other to William K. Nimick, from whom he had received $12,650. On the 30th of January 1864, the District Court reciting these facts as appearing of record, and the further allegation that the said moneys were deposited by the sheriff in the Allegheny Bank to his credit as sheriff, on motion of counsel, made a rule on Dr. H. T. Coffey, administrator of the estate of sheriff Woods, and on the said bank to show cause why the said moneys should not be brought into court together with the sheriff's account with the bank. On the 13th of February 1864, the bank answered the rule by setting forth the general facts of Sheriff Wood's deposits and balance, and added, that the bank had no knowledge of the sources from which said moneys came into Sheriff Wood's possession. They further showed that the administrator claimed the balance in bank to the credit of Sheriff Woods, and had warned them not to suffer the money to be withdrawn without his consent, and they objected to the rule being made absolute until all parties in interest had been heard.

On 20th February, the administrator answered the rule by alleging, 1st. That the court had no jurisdiction over him in such a proceeding as this; 2d. That the court had no control over the fund; 3d. That it was not distinguishable from other moneys with which it was mixed in the sheriff's account in bank; 4th. That the fund is claimed in different ways, by different sets of creditors, and by different modes of distribution, and on these grounds demanded that the rule be discharged. On coming in of this answer, counsel, with leave of the court, withdrew the said

rule as to the administrator, and on the 20th of May 1864, the court made the rule absolute as to the bank, and ordered them to pay into court $25,265, which the bank accordingly paid in the next day. Sheriff Stewart also paid in $7661, collected by him on this writ, and the court appointed an auditor to distribute these sums. After hearing all parties who appeared before him, the auditor awarded the whole fund, less costs and charges, $32,732.69, to the judgment of Samuel McKee, Trustee, &c., *v.* Catherine Lorenz, No. 204, January Term 1860, and the court confirmed his report, whereupon the bank took this appeal.

The administrator, dropped from this proceeding, has no further interest in it. The court did not pass upon the objections he urged in answer to the rule, and of course they are not up for review. Nor are there any execution-creditors claiming the money as against McKee. Mr. Hopkins appeared before the auditor for H. S. King, a judgment-creditor, and Mr. Gallagher appeared for Judge Sterrett as administrator *de bonis non* of Frederick Lorenz, deceased, but the auditor dismissed these parties as strangers to the fund, and they acquiesced. If from the fund actually distributed by the auditor, say $32,732.69, we deduct the sum collected by Sheriff Stewart, $7661, the balance $25,071.69, is less than the aggregate of the two sums which the court decided, on the 30th of January 1864, had been received by Sheriff Woods from Love and Nimick on Kirkpatrick's execution. It is a necessary inference from the testimony of Deputy-Sheriff Riddle, that these sums, and indeed all the moneys received on the Kirkpatrick writ, had been deposited to the credit of the sheriff's account. From all these premises it is apparent, that the funds touched by the decree of the court were made upon the writ of Kirkpatrick, issued out of that court, and that there is no party here questioning the decree, except the bank who was a mere depositary of the funds without any beneficial interest in them.

The question then seems to be, whether a court, on whose execution a sheriff has sold lands of the defendant and deposited the proceeds in bank, can, after the death of the sheriff, rule the bank to pay the proceeds into court for purposes of distribution.

The proceedings against the bank were irregular. When the court were informed by the return of Sheriff Stewart what moneys his predecessor had made upon the writ of McKee, the proper course would have been, we apprehend, to rule him, Sheriff Stewart, to pay into court, or to the plaintiff in the writ, the moneys made by his predecessor on that writ. Sheriff Stewart would have found them on deposit to the credit of his office, and he was the proper party to demand and receive them from the bank. If the money had been deposited in the private account of Sheriff Woods, there might have been difficulties in

the way of Sheriff Stewart demanding it, but, deposited to the credit of the sheriff, an office which never dies, the incumbent for the time being was the proper party to control the fund. This is the principle upon which all official funds, specially deposited, are disposed of. It is to be presumed that the bank would have recognised the right of Sheriff Stewart, and thus he would have enabled himself to respond to the rule of the court. But if the bank had refused to pay over the money to him, he would have had to sue for it, and to obtain the indulgence of the court until he could enforce his right. Section 101 of our Execution Law of 16th June 1836, Purd. 449, is founded upon this principle of devolving unfinished official duties of a deceased sheriff upon his successor in office. Part of the lands taken in execution by Sheriff Woods upon McKee's writ remained unsold at his death, a circumstance which brings the case within the above-named section, which goes on to enact, that "the proceedings upon such execution shall be continued and completed by his successor in office, and all other necessary and proper writs and process in such case shall be directed to such successor." Here was a plain intimation that the process of the court, founded on that writ, should have been directed to Sheriff Stewart instead of the bank.

But it seems to be thought that the money was already in court, or that the bank was in some sort a trustee for the court, and therefore subject to its order as the sheriff himself would have been. Money is not in court when collected by a sheriff, and it is very important that it be not so considered, else we discharge the liability of his bail. Had the bank proved insolvent and the money been lost, is it to be doubted that Sheriff Stewart, or the plaintiff in the writ, might have recovered it of the bail of Sheriff Woods? The bank was his depositary, selected by him, responsible alone to him or his official successor, and for its default he and his bail would have been answerable as much as for the default of a deputy or any other private agent. Moneys paid into court are sometimes deposited in bank, but the bank is in such cases selected by the court, the deposit is made by its clerk, and is controlled by the court itself, and in case of loss whoever is responsible, it is certain that neither the sheriff nor his sureties are. Thus plainly marked is the distinction between money deposited by the sheriff on his own responsibility, and that which the court deposits. To say that the court had power to direct the distribution of the money in the sheriff's hands, or on deposit to his credit, is not to admit that the court has any authority over the bank as a custodian or trustee for the court. The bank held the funds for the sheriff, and he was bound to distribute them as the court should decree.

Paying or bringing money into court is a very different matter from collecting it on execution and distributing it under a decree

[Allegheny Bank's Appeal.]

of the court. The practice of bringing money into court is said to have been first introduced in the reign of Car. II., to avoid the hazard and difficulty of pleading a tender. In actions upon contract, and in England now by statute of 3 & 4 W. 4, c. 42, in *all personal* actions, with a few exceptions, the defendant may have leave to bring into court any sum he thinks fit, and the court will make a rule that unless the plaintiff accept it, with costs, in discharge of the action, it shall be struck out of the declaration, and the plaintiff upon trial shall not be permitted to give evidence of it, which rule should be accompanied with a plea to the residue of the demand : Tidd's Prac., Vol. 1, p. 619. Of course after this the plaintiff proceeds in his action at the peril of costs, for unless he prove a larger sum than the amount brought in, the defendant must have the verdict.

Bringing money into court, therefore, technically considered, is a mode of defence against a pending action, and stands instead of a plea of tender. The money so brought in is in *custodia legis*, and is usually deposited in bank or other safe place to the credit of the court or some of its officers, to await the acceptance of the plaintiff or the further order of the court. The plaintiff may take it when he pleases, as payment *pro tanto* of his claim, but the defendant can never recall it.

Money made by a sheriff in execution of a judgment is subject to the order of the court, but so far from being "money in court," it is held by the sheriff upon his personal and official responsibility until actually paid to the legal distributees. Nor does official custody cease on the death of the sheriff, for by the 75th section of the Act of 15th April 1834, Purd. 896, the coroner on the death or removal of the sheriff is to " execute the office of sheriff and perform all things thereunto appertaining until another sheriff shall be duly commissioned and notice thereof given to such coroner." A similar provision exists in England, by statute, whereby the under-sheriff, upon the death of the high-sheriff, is authorized to execute the office, *in the name of the deceased sheriff*, until a successor is qualified.

When Sheriff Woods died, the coroner, *ex officio*, was entitled to execute the office, to control official deposits, to return writs, and pay over moneys, but as soon as Sheriff Stewart was duly qualified the coroner's rights and duties passed over to him. Hence, we hold that the court, instead of treating the fund as in court, should have ruled Sheriff Stewart to pay it to the proper distributees.

And because the bank sustained no relation to the court, it was not subject to the rule of court. These rules are enforceable by attachment as for a contempt, because a party who is subject to a rule of court places himself in contempt by disobedience to it. When are rules enforceable by this summary process ?

[Allegheny Bank's Appeal.]

In the first volume of Tidd's Practice (Troubat & Fish's Ed. 1856), p. 478, ten cases are put in which the King's Bench, Exchequer, and Common Pleas may grant rules:—1st. Against parties to a suit; 2d. Against attorneys; 3d. Against officers of the court; 4th. Against inferior judges and officers; 5th. Against sheriffs or others charged with the execution of process; 6th. Against jailers; 7th. Against jurymen; 8th. Against witnesses; 9th. Against peers of the realm and members of the House of Commons for disobeying *subpœnas;* and 10th. Against other persons for disorderly conduct in the presence of the court, or for contemptuous words spoken of the court not in their presence.

With us this last ground of attachment is confined to misbehaviour in the presence of the court, thereby obstructing the administration of justice. See our Act of Assembly relating to contempts, Purdon 188. By the 28th section of same act the several courts of the Commonwealth are empowered to make rules on sheriffs and coroners for the return of all process in their hands, and for the payment of money or delivery of any article of value in their possession, which rules are to be enforced by attachment.

Now in all of these cases, whether in the English courts or our own, where the judicial power is exercised by rules as contradistinguished from legal process, it is observable that an antecedent relation has been established betwixt the court and the party ruled, either by the service of process, by office, or by statute, or by the necessities of business. Suitors, witnesses, jurymen, are in court, or subject to its summary power by virtue of legal process, attorneys and the like by official position, sheriffs by statute, and disorderly persons offend the dignity and disturb the business of the court. And for these reasons or some of them these classes of persons are liable to the summary powers with which the court is armed, but without some of these relations or liabilities there is no precedent for administering justice by rules of court. Outside parties who in none of the recognised modes have previously become subject to the jurisdiction of the court, are to be acted upon only by the ordinary process of law, and not by the summary power now under consideration.

The bank was such an outside party. The sheriff, when he made it his depositary, established no relation whatever betwixt the court and the bank. Its responsibility was not to the court but to the sheriff, and though bound to pay over his funds upon his order or that of his successor, whether the coroner or the new sheriff, no statute, usage, or principle of the common law subjected it to this summary jurisdiction. And if the bank had disregarded the rule of court I know of no process by which the

court could have punished it for the contempt.  Corporations may be indicted for misdemeanors, and they are subject to *distringas* and distress infinite for not appearing to answer legal process, duly issued and served, but they are not liable to attachment.  By our Act of 16th June 1836, Purd. 199, besides the ordinary forms of executions, corporations are liable to sequestration and attachment-execution, but all executions of whatever form are grounded on prior legal process, by which jurisdiction over them has been obtained, and upon judgments at law or decrees in equity duly pronounced against them.  Such an anomaly as execution against a corporation founded on a rule of court in proceedings at law between other parties, is not to be found in our books.

I conclude, therefore, that the rule upon the bank was null and void for want of jurisdiction, and might have been restrained by injunction, or reversed upon appeal, because when made absolute it was final as to the bank, or it might have been disregarded as incapable of execution.  We cannot presume that the District Court would have undertaken to enforce it; the necessary presumption is that they would not.  Yet the next day after the rule was made absolute the bank paid the money into court without a syllable of exception to the jurisdiction.  The court proceeded to make distribution, and from the *decree of distribution* the bank appeals.

Now suppose the proceedings reversed—the money would not go back to the bank, because it was voluntarily or at least not compulsorily paid.  Restitution is awarded only when payment has been compelled by execution in an erroneous judgment, not when paid without execution.  And we have seen that there was no execution in this case and could have been none.  A reversal, therefore, would be useless to the bank.  This is a sufficient answer to all the errors assigned except the fifth, which complains of the court's overruling the exceptions to the auditor's report.

The answer to this is that the bank is not a creditor and has no interest in the fund for distribution, and therefore has no right to appeal from or question the distribution.  Having slipped its time to object to the jurisdiction of the court, and having voluntarily placed the fund at the court's disposal, it was a stranger to all the subsequent proceedings.

We might and probably would have dismissed the case in very few words, on this ground, if doubts had not arisen upon the several points discussed, which made it necessary to notice them more at large than any intrinsic merits of the case would have demanded.

The decree is affirmed.