## THE CITIZENS N. BANK v. W. J. ALEXANDER.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 4, 1888—Decided May 21, 1888.

1. Money deposited by one to the credit of himself, as deputy treasurer, cannot be applied by the bank, sua sponte, to the payment of an overdraft by another as county treasurer.
2. A bank which has received money from a depositor, credited him with it on his books, and thereby engaged to honor his checks, has no standing to allege that the money deposited belongs to another and may be appropriated to such other's account: First N. Bank v. Mason, 95 Pa. 113, followed.

Before GORDON, C. J., PAXSON, STERRETT and WILLIAMS, JJ.; TRUNKEY, GREEN and CLARK, JJ., absent.

No. 380 January Term 1888, Sup. Ct.; court below, No. 84 March Term 1887, C. P.

On February 25, 1887, W. J. Alexander brought assumpsit against The Citizens National Bank of Warren, to recover a balance of a deposit account to his credit.

At the trial on December 14, 1887, on motion of plaintiff's attorneys the record and pleadings were amended by adding after the plaintiff's name, wherever it occurs, the words " Deputy Treasurer," and by agreement of the parties, the cause was submitted to be heard by the court without a jury under the act of April 22, 1874, P. L. 109.

On January 28, 1888, the court, GUNNISON, P. J., 6th judicial district, holding special term, filed a finding of facts and law which was as follows:

I. On February 17, 1886, the plaintiff opened an account with the defendant under the name of W. J. Alexander, deputy treasurer, to which account he deposited money from time to time until February 4, 1887. The aggregate amount so deposited was $77,866.06. Checks were drawn upon the account prior to February 21, 1887, to the amount of $75,923.54, and on that day plaintiff drew a check for the balance, $1,942.52, which was duly presented to the defendant, and payment of it refused, whereupon this suit was brought.

Having shown these facts, the plaintiff rested.

The defendant then offered to prove that Chas. H. McAuley was the treasurer of Warren county from January 1, 1884 until January 1, 1887; that he kept his account in the Citizens National Bank of Warren, as treasurer; that his credit balance on February 1, 1886, was $6,761.13; that he drew thereafter for the legitimate expenses of the county, checks on that account, which created an over-draft of $1,942.52 on the 8th day of February, 1886; to be followed by evidence that so much of the money deposited by his agent, W. J. Alexander, as deputy treasurer, was applied to the extinguishment of that over-draft.

This offer was objected to by the plaintiff, the objection overruled, and the evidence admitted, the question of its relevancy being reserved.

It then appeared that C. H. McAuley was elected county

treasurer in the fall of 1883; was qualified and entered upon his office duties the first Monday of January, 1884; that as county treasurer he was ex-officio treasurer of the commissioners of the Rouse estate; that he gave bonds with Thomas Struthers and Myron Waters as sureties; that his sureties, becoming suspicious that he was misappropriating the public money in his hands, an investigation was made by them into his administration of the office; that as a result of this investigation, an agreement was made February 9, 1886, by which W. J. Alexander was appointed by him deputy treasurer and given exclusive authority to draw checks on his bank account as treasurer, to receive all moneys to be received by the treasurer of Warren county or of the commissioners of the Rouse estate, which moneys were agreed to be deposited in the Citizens National Bank of Warren; the intention of the agreement being that the plaintiff, W. J. Alexander, should perform all the duties and exercise all the powers of the treasurer of Warren county and of the commissioners of the Rouse estate, and have full and entire control of all moneys coming in or going out of the office of said treasurer.

It further appeared that C. H. McAuley had overdrawn his account with the defendant in the sum of $1,942.52, and that on July 19, 1886, the defendant, without authority from the plaintiff, charged that amount to his account, and credited it to account of C. H. McAuley, treasurer, thus balancing McAuley's account. It was not shown that the plaintiff was notified of this action of the bank other than by the balancing his pass book, which was done at least once before February 10, 1887.

It also appeared that Myron Waters, one of the sureties on McAuley's bond, was president of the Citizens National Bank of Warren, and had knowledge of the agreement by which the plaintiff was appointed deputy treasurer at the time it was entered into, and that the money deposited by plaintiff was the money of Warren county and of the commissioners of the Rouse estate.

II. The only question of law involved is, whether or not the defendant had the right to charge the plaintiff with the amount of the over-draft made by C. H. McAuley, treasurer.

It is not disputed that the money deposited to both was

public money, belonging to Warren county and the commissioners of the Rouse estate. The defendant claims that it had the right to inquire into the ownership of the two funds, and that, the ownership of both being the same, it could set off the indebtedness existing on the one account against the claim of the plaintiff on the other. Plaintiff contends that the defendant is estopped by its own act in opening the account with Alexander and receiving the money deposited by him to the credit of his account, from setting up that he was not the owner of the fund so far as the bank is concerned.

I am unable to distinguish this case in principle from the case of First N. Bank v. Mason, 95 Pa. 113. In that case the facts as recited in the opinion were as follows: The plaintiff below brought his suit against the First National Bank of Lock Haven to recover the amount of moneys he had deposited with the said bank. The defendants offered to prove that the money deposited in the name of James D. Mason, the plaintiff, was in fact the money of Thomas & Mason, of which firm the plaintiff was clerk; that the plaintiff had admitted at the time the deposits were made that the money belonged to said firm, and were placed in his name as a matter of convenience in paying small bills; and that the said Thomas & Mason were indebted to the said bank in excess of the amount standing on its books to the credit of the plaintiff. The bank claimed to set off the indebtedness of Thomas & Mason against the claim of the plaintiff in this suit. The evidence was rejected by the court below, and forms the subject of the first assignment of error.

It will be observed that the defence attempted to be set up in that case was precisely similar to that relied upon in the case under consideration. Some of the cases cited by this defendant in support of its position were referred to in the opinion in that case, in which Mr. Justice PAXSON, after referring to them and showing that they referred to cases where the real owner of the money deposited, or his creditors, claimed it as against the person who deposited it, and in whose name the account stood on the books of the bank, said: "We have here a very different question. The bank, the depositary, sets up an adverse title, to defeat the suit of its own depositor. It is clearly against public policy to permit a bank that has received

money from a depositor, credited him therewith upon its books, and thereby entered into an implied contract to honor his check, to allege that the money deposited belonged to some one else. This may be done by an attaching creditor, or by the true owner of the fund, but the bank is estopped by its own act. A departure from this rule might lead to novel results, and embarrass commercial transactions." The judgment of the court below was affirmed.

[It must follow from this authority that the evidence offered by the defendant at the trial should have been rejected. Having been admitted under objection, it should now be disregarded. No other defence having been shown by the defendant, I am of the opinion that the plaintiff is entitled to recover, and I accordingly find for the plaintiff and against the defendant in the sum of two thousand and fifty dollars ($2,050), being the amount of the plaintiff's claim, with interest from February 2, 1887, to January 24, 1888.][4]

Defendant's points:

1. There being no statute authorizing the appointment of a deputy county treasurer, the effect of the paper or instrument dated February 9, 1886, signed by C. H. McAuley, was only to constitute W. J. Alexander the agent of C. H. McAuley, treasurer of Warren county.

Answer: This point is affirmed.

2. That the money deposited by W. J. Alexander in the Citizens National Bank, defendant, was the money of C. H. McAuley, treasurer of Warren county, and he so designated or "ear marked" it by depositing it in the name of W. J. Alexander, deputy treasurer.

Answer: This point is refused. The money was the money of Warren county and of the commissioners of the Rouse estate. The defendant, however, could not assert its ownership in the absence of any claim to it by the true owner. It is estopped from denying that it was the money of W. J. Alexander, by receiving and placing it to the credit of his account upon its books.[1]

3. That said Alexander, by directing the said bank to keep the account in the name of W. J. Alexander, deputy treasurer, thus designated himself the agent of C. H. McAuley, treasurer of Warren county, and no principle of public policy will pre-

vent the said bank from showing such fact, or in applying the funds so deposited by him to the extinguishment of said McAuley's overdrawn account.

Answer: This point is refused.[2]

4. That the said Citizens National Bank had a right to apply enough of the money so deposited by said W. J. Alexander in the name of W. J. Alexander, deputy treasurer, to the account of said C. H. McAuley, treasurer, to extinguish his overdrawn account.

Answer: This point is refused.

5. That the knowledge of the instrument dated February 9, 1886, obtained by M. Waters, while looking after his interests as bail of C. H. McAuley, treasurer of Warren county, is insufficient to affect the defendant with notice of the existence or contents of said instrument.

Answer: This point is affirmed. In view of the conclusion that I have arrived at, however, it is of no importance whether the bank had notice of the agreement made February 9, 1886, between C. H. McAuley, Thomas Strothers and Myron Waters or not.

6. That the money placed on deposit in the said Citizens National Bank by C. H. McAuley, treasurer of Warren county, and by W. J. Alexander, his deputy or agent, constituted and was a public fund, of which the said McAuley and Alexander were simply the legal custodians, and of which the said bank was the depositary; and for any temporary deficit in said deposit account by over-draft of its custodian and depositor, subsequent deposits of the same fund would be liable to make good the shortage, and the bank would have a right to so apply it.

Answer: This might be so if the subsequent deposit had been to the same account, or in the same name. In this case the subsequent deposit being to a different account and in a different name, it is not liable to make up the shortage in the first account, and the bank had no right to so apply it.[3]

And now, January 24, 1888, the prothonotary is directed to give notice of the decision and finding in this case, to the parties or their attorneys, and if no exceptions are filed thereto within thirty days after service of said notice, to enter judgment upon said finding for the plaintiff and against the de-

fendant for the sum of two thousand and fifty dollars ($2,050), with interest to January 24, 1888.

To this finding, the defendant on February 3, 1888, filed various exceptions alleging error in refusing the second, third, fourth and sixth points, in finding for the plaintiff, and in not directing judgment for the defendant upon the facts as found. On February 10, 1888, an additional exception was filed :

7. The court erred in not finding as a fact that the plaintiff's pass book was balanced soon after the charge of $1,942.52 was made to his account and credited to the account of C. H. McAuley, treasurer, thus balancing McAuley's account; and that the pass book, together with the ticket evidencing that fact, and the other vouchers, were then returned to him.

Whereupon, said exceptions were disposed of by the court as follows :

The first six exceptions filed by the defendant are overruled.

The seventh exception is sustained. The facts to which it refers were not as fully found in the finding of facts as the evidence warranted. Accordingly I now find as facts, that the plaintiff's pass book was balanced soon after the charge of $1,942.52 was made to his account and credited to the account of C. H. McAuley, treasurer, thus balancing McAuley's account; and that the pass book, together with the ticket evidencing the charge and the other vouchers, were then returned to him. As the evidence, upon which these facts are found, was, in my opinion, irrelevant, they do not affect the rights of the parties.

And now, to wit, Feb. 15, 1888, it is ordered that judgment be entered in accordance with the decision already filed in the above entitled case.

Judgment having been entered as directed, the defendant took this writ assigning as error :

1–3. The answers to the defendant's points.[1 to 3]

4. The part of the charge embraced in [ ] [4]

*Mr. W. M. Lindsey* (with him *Mr. S. P. Johnston and Mr. James O. Parmlee*), for the plaintiff in error :

1. In First N. Bank v. Mason, 95 Pa. 113, Mason deposited the money in his own name. True, he admitted in making some of the deposits that it belonged to Thomas & Mason, but the

bank received it as a deposit in his own name, and therefore became debtor to him for the amount so deposited. The bank was estopped on the ground of public policy from denying that the deposit was Mason's, or from proving that it was the money of Thomas & Mason. Had Mason deposited to his credit as agent of Thomas & Mason, he would have designated the owners of the money to be Thomas & Mason, according to the principles of Bank of Northern Liberties v. Jones, 42 Pa. 536. This was precisely what was done by the plaintiff in this case. Having in his deposit account designated the true ownership of the money, why had not the defendant bank the right to set off the owner's indebtedness to it against an equal amount of said account? What principle of public policy would be violated?

2. Again: in First N. Bank v. Mason, the bank was obliged to resort to parol proof to show whose money the deposit was, and thus to contradict the terms of the deposit. In this case the plaintiff himself designated the ownership of the money in his deposit account; no proof whatever was necessary. The ownership appeared on the books of the bank and in the plaintiff's pass book. The money was, therefore, prima facie the money of the persons so designated: Arnold v. Macungie Savings Bank, 71 Pa. 287: Stair v. York N. Bank, 55 Pa. 368.

3. Moreover, both the form of the deposits and the finding of the court declare the fund to be a public fund, the property of Warren county. McAuley, the treasurer, and Alexander, his deputy, were simply the trustees or custodians of that fund successively, while officially charged with its administration. If this be true, and there happened to occur at any time a deficit in the account by an overdraft, should not a subsequent deposit to the credit of the fund make good that deficit? The identity of the fund being established, the trustee or custodian under whose administration the deficit occurred can be a matter of no importance: Reed v. Penrose, 36 Pa. 235. The defendant bank owes nothing whatever to the county of Warren, and why should any recovery be permitted?

*Mr. W. E. Rice* (with him *Mr. R. Brown, Mr. C. W. Stone* and *Mr. H. E. Brown*), for the defendant in error:

1. A comparison of the facts of this case with those of First N. Bank v. Mason, 95 Pa. 113, renders unnecessary any argu-

ment for the plaintiff. The two cases are parallel in fact and identical in principle. The controlling principle is expressly recognized and followed in German Bank v. Hemstedt, 47 Ark. 62, and in Bolles on Banks, 56, and had been practically enunciated in Jackson v. Bank of U. S., 10 Pa. 61. See also Lund v. Seaman's Bank, 37 Barb. 129.

2. There is another ground upon which the court below might have rested the judgment. The overdraft of McAuley, the county treasurer, was not the debt of Warren county, but the personal indebtedness of McAuley, practically a loan to him individually. The bank could not sue the county to recover this overdraft. The county treasurer has no power to bind or pledge the credit of the county for money borrowed. How, then, can the money admitted to be the property of Warren county be applied to the private debt which McAuley owed the bank? The fund must be preserved for its true owner: F. & M. N. Bank v. King, 57 Pa. 202; National Bank v. Insurance Co., 104 U. S. 54.

OPINION, MR. JUSTICE PAXSON:

This case is ruled by Bank v. Mason, 95 Pa. 113. It was there held that "it is clearly against public policy to permit a bank that has received money from a depositor, credited him therewith upon its books, and thereby entered into an implied contract to honor his checks, to allege that the money deposited belongs to some one else. This may be done by an attaching creditor, or by the true owner of the fund; but the bank is estopped by its own act."

The learned judge below applied this principle to the facts of this case, and herein he committed no error. The bank had no standing to assert that the money deposited to the credit of W. J. Alexander, deputy treasurer, did not belong to him; much less had it the right to apply $1,942.52 of this money to an overdraft of C. H. McAuley, treasurer. Granted that the money deposited by Alexander belonged to the county as a matter of fact, yet as between the bank and its depositor it was the money of the latter. It was in no sense ear-marked as county money. The fact that it was deposited to the credit of W. J. Alexander, deputy treasurer, did not so ear-mark it. For aught that appeared upon the books of the bank it might

have been as deputy treasurer of a building association. The most effect that could be claimed for the words "deputy treasurer" was an acknowledgment by Alexander that he held the money for some one else, and the other person not being designated, as between the bank and Alexander the money belonged to Alexander. The bank could not refuse his check unless at the demand of an attaching creditor or the true owner of the fund. It is equally true that the bank could not have paid out a dollar of this fund upon the check of McAuley the treasurer. The very object of the arrangement with Alexander, assuming the money to belong to the county, was to place it beyond the control of McAuley. If the latter could not draw it upon his check how can the bank apply it to cover McAuley's overdraft? It was gross negligence in the bank to allow the overdraft, and it cannot protect itself in this summary manner and deny its depositor's check. The case is too plain to require further discussion.

Judgment affirmed.