# Pittsburg for use, Appellant, *v.* First National Bank of Sheraden.

*Boroughs—Treasurer—Borough treasurer—Public moneys—Warrants —Bank accounts—Overdraft.*

1. Where a borough treasurer opens an account in a bank in his own name as treasurer, and deposits public moneys therein, the account is the account of the treasurer, and not that of the borough. Where after the treasurer has opened such an account he causes words to be stamped on the back of borough warrants, to the effect that such warrants will be paid when properly indorsed at the bank named, and signs the indorsement with his own name as treasurer, such indorsement is the equivalent of a check drawn directly by the treasurer upon the bank.

2. Where the treasurer by reason of his also being the cashier of the bank, makes an overdraft on his account as treasurer, the overdraft is in the nature of a loan, not to the borough, but to the treasurer; and the bank, in the absence of any authority in the treasurer to borrow money for the borough, and in the absence of any ratification by the borough of the treasurer's act, cannot hold the borough liable for the overdraft.

3. Where a borough treasurer who is also the cashier of a bank opens an account in his bank in his own name as treasurer, and stamps upon the borough warrants his orders for payment directed to his own bank, and subsequently makes an overdraft on his account as treasurer, and thereafter the treasurer presents the warrants in question to the borough auditors passing upon his accounts, no appeal being taken from their report, and the warrants are secured by the bank from the auditors for temporary use in checking up the treasurer's account, the bank has no right to retain possession of the warrants, or to use them as a means of compelling the borough to pay the amount of the treasurer's overdraft.

Argued Oct. 27, 1910. Appeals, Nos. 142 and 143, Oct. T., 1910, by plaintiff, from decree of C. P. No. 4, Allegheny Co., Third T., 1910, No. 196, dismissing bill in equity and sustaining cross bill in case of Pittsburg for use of the Borough of Sheraden v. The First National Bank of Sheraden and A. R. Albaugh, William J. Sheraden and Franklin P. Iams. Before Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Reversed.

Bill in equity to restrain the collection of moneys represented by certain warrants and other evidences of debt, and to compel the surrender of such warrants and evidences of debt. Before Miller, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* among others were in dismissing the bill and in sustaining the cross bill.

*N. R. Criss*, solicitor for the borough of Sheraden, with him *Charles A. O'Brien*, solicitor for the city of Pittsburg, and *C. Elmer Bown*, assistant solicitor, for appellants.— The borough was not liable for the overdraft: Railroad Nat. Bank v. Lowell, 109 Mass. 214; East Hartford v. American Nat. Bank, 49 Conn. 539; Merchants' Nat. Bank v. Nichols, 223 Ill. 41; Citizens' Nat. Bank v. Alexander, 120 Pa. 476.

An examination of the evidence will not show any cor-

porate act from which a ratification could reasonably be presumed or even argued: Nason v. Poor Directors, 126 Pa. 445; School Dist. v. Fuess, 98 Pa. 600; Wormstead v. Lynn, 184 Mass. 425.

A municipality may, under certain circumstances be held upon an implied obligation or promise, but we submit that no case in Pennsylvania or elsewhere has ever carried the doctrine of implied liability to the extreme to which it has been carried by the learned court below in this case.

The mere rendering of a benefit, and its enjoyment by the municipality will not raise an implied promise to pay: Anderson v. Hamilton Twp., 25 Pa. 75; Gibson v. Poor Dist., 122 Pa. 557; Long v. Lemoyne Boro., 222 Pa. 311.

The case at bar is fairly ruled by the case of First National Bank v. New Castle, 224 Pa. 285.

The auditors' report was filed with the clerk of the court of quarter sessions, and no appeal being taken within thirty days it became in effect a judgment of the court, and was conclusive except as to mistakes apparent on the face of the record: Com. v. Joyce, 3 Pa. Superior Ct. 616.

*John C. Bane,* with him *J. D. Iams* and *F. P. Iams,* for appellees.—The borough was bound by the action of the treasurer: Dittey v. Bank, 43 U. S. Appeals, 613; Aldrich v. Chemical Nat. Bank, 176 U. S. 618; Logan County Nat. Bank v. Townsend, 139 U. S. 67; Wheeler & Wilson Co. v. Aughey, 144 Pa. 398; Amberson Ave., 179 Pa. 634; McKnight v. Pittsburg, 91 Pa. 273; Sandy Lake Boro. v. Gas Co., 16 Pa. Superior Ct. 234; McCormick's App., 165 Pa. 386; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268; Long v. Lemoyne Boro., 222 Pa. 311.

The warrants, being the property itself, were delivered to the bank upon their payment, with its money, as a part of the same transaction. Of this the borough had full notice before its attempted appropriation of the

warrants to its own use: Kelly v. Phelan, 5 Dillon, 228; Armstrong v. Chemical Nat. Bank, 41 Fed. Repr. 234; Cocrill v. Joyce, 62 Ark. 216; Masonic Savings Bank v. Bangs, 84 Ky. 135.

The warrants in controversy as well as the coupons were paid with the bank's money by the borough treasurer, marked paid, with the stamp of the bank, showing payment by it, and immediately delivered to the bank, either as the owner thereof or pledgee. For the purposes of this case there is no difference. In either event the bank is entitled to hold them until they are paid: Bond v. Bunting, 78 Pa. 210; Allegheny City v. McClurkan, 14 Pa. 81; Wheeler & Wilson Co. v. Aughey, 144 Pa. 398; Mundorff v. Wickersham, 63 Pa. 87.

OPINION BY MR. JUSTICE POTTER, January 3, 1911:

In this case the city of Pittsburg, for the use of the borough of Sheraden, filed a bill in equity against the First National Bank of Sheraden, and against A. R. Albaugh, William J. Sheraden and Franklin P. Iams, directors of the bank. As stated by the trial judge, the bill sets forth the annexation of the borough of Sheraden to the city of Pittsburg, and charges that the defendant bank has wrongfully in its possession certain vouchers, warrants, bonds, coupons and a check, evidences of paid indebtedness of the former borough of Sheraden, and that said bank demands payment of these vouchers, and threatens suit thereon against the plaintiffs.

The bill prayed that the bank be restrained from attempting by suit or otherwise to enforce the payment of any sums or debts represented by the warrants, bonds, coupons and check in question, and further prayed that the defendants be required to deliver the warrants, bonds, etc., aforesaid, as cancelled vouchers, to the proper authorities of the said city and borough.

The defendant, the First National Bank of Sheraden, filed a cross bill against the city of Pittsburg and borough of Sheraden, praying that the said city and borough be

adjudged to be indebted to the bank in the sum of $17,468.67 with interest, and be ordered to pay the amount of such indebtedness to the bank.

From the findings of fact by the trial judge, it appears that, in November, 1905, T. Ure Williams, then cashier of the First National Bank of Sheraden, was duly appointed borough treasurer of the borough of Sheraden, qualified as such, and assumed the duties of said office under annual appointment of the borough council, until September 6, 1907. Upon that date he was removed from his office of treasurer by the borough council, and an audit of his account was ordered from March 11, 1907 to November 19, 1907. Among other items for which Williams claimed credit, was the payment of the warrants, bonds, vouchers, etc., which are the subject of this dispute, and this claim was allowed by the auditors. After making this allowance, the auditors found him to be indebted to the borough, as we understand their report, in the sum of $4,547.90. The report of the auditors was filed in the office of the clerk of the quarter sessions court on January 17, 1908, and from this report no appeal was taken.

After the auditors had allowed credit to Williams for the warrants and other vouchers, which had been produced by him before them, and which were in their possession during the investigation of his accounts, he (Williams) acting for the bank, secured from the auditors the return of these vouchers in question, and placed them again in the vaults of the bank. The testimony of the auditors was that they were obtained from them for the temporary use of the bank, to check up Williams' account. After thus obtaining possession of these vouchers, which had been used by Williams in his accounting with the auditors, the bank refused to surrender them, and later claimed to hold them as evidence of indebtedness from the borough to it.

It seems that when Williams became treasurer, no depository was designated by the borough, in which the

funds should be kept, but Williams as treasurer, opened in his own bank three accounts under the following heads: "Borough of Sheraden, General Fund, T. Ure Williams, Treasurer;" "Borough of Sheraden, Sinking Fund, T. Ure Williams, Treasurer;" "Borough of Sheraden, Sewer and Paving Fund Account, T. Ure Williams, Treasurer." The method by which payments were made from these accounts by Williams appears from the fifth finding of fact. When warrants or orders for the payment of claims against the borough were presented to him, they were stamped by the treasurer as follows: "This warrant will be paid when properly indorsed at the First National Bank of Sheraden." Signed "T. Ure Williams, Treasurer." It will be noted that this indorsement stamped upon the vouchers by the treasurer was the equivalent of a check drawn directly by the treasurer upon the bank. The result was precisely the same as though the treasurer had retained possession of the warrant or other voucher, directed to him, and had issued in payment thereof his check as treasurer, upon the bank in which he kept his accounts as such. He might have paid the warrants in cash, or he might have paid them by checks upon any depository chosen by him. The borough had no control over his action in this respect. As stated in the first conclusion of law, offered by counsel for plaintiffs, and affirmed by the trial judge, the treasurer of the borough, T. Ure Williams, was an independent accounting officer, by statute made the depository of the moneys of the borough. In the fourth request by plaintiffs for conclusions of law, they asked the court to say, "The deposit accounts opened in the First National Bank of Sheraden by T. Ure Williams, the Borough Treasurer, are the accounts of the Treasurer, and not the accounts of the Borough." The answer of the court was, "Affirmed as to opening of the accounts." This was true, but the affirmance should have been without qualification, for at no time did it appear that the borough had any control over the accounts which its treasurer opened in the

bank. The borough made no deposits; it drew no checks against these accounts. Its funds were placed in the custody of its treasurer, and were disbursed by means of warrants or vouchers addressed to him, and not to any bank. The fact that he may have stamped his order for payment directed to his bank upon the original warrant, or voucher, made no difference. It was the act of the treasurer, and his alone, that authorized the bank to charge against his account, the amount authorized by him to be so charged. The borough could have no means of knowing whether Williams deposited in the bank all the funds which came into his possession as treasurer. Whether he did or not, was no affair of the borough. That an account thus opened with a bank by the treasurer of a municipality is the account of the treasurer and not that of the municipality, has been authoritatively settled. In Swartwout v. Bank, 5 Den. (N. Y.) 555, a deposit in the bank was made in the name of "Samuel Swartwout, collector." WHITTLESEY, J., said (p. 558): "A mere deposit by a collector in his own name, with his official addition, is no accounting for the money received by him in his official capacity. A .county treasurer, sheriff, surrogate, or other such officer, opens an account with a bank with his official addition, and keeps a separate account in such capacity, most clearly he can collect such deposits in his own name, and the bank would not be permitted to show that the money belonged to the county," etc. This doctrine was cited with approval in Scranton v. Bank, 24 N. Y. 424 (428). It was also followed in Perley v. Muskegon County, 32 Mich. 132 (136), which was a case of a county treasurer. In a still later Michigan case, Lansing v. Wood, 57 Mich. 201, it was said (p. 211): "We held, in Perley v. Muskegon, 32 Mich. 132, that where the bank in which a treasurer makes a deposit is not one which is determined by law as a public agency for deposit, the money which he deposits there is at his own risk and is not a public bailment, and becomes a private debt from the banker to him."

With regard to the payment of these particular vouchers in question, it seems that the result of the audit showed that after their payment, and after allowing Williams the credit he claimed for having paid them, there was still a balance of $4,547.90 due to the borough in the hands of the treasurer. So that, at the end of his term, as between the borough and the treasurer, the funds of the borough as a whole were not overdrawn. The manner in which the accounts were kept did show that as to two of the separate funds, they were overdrawn, but the balance to the credit of the "Sewer and Paving Fund" gave the borough a large amount to its credit upon the whole amount of its funds, in the hands of its treasurer. If then the treasurer had seen fit to deposit all the funds of the borough in the defendant bank, there would have been no need for any overdraft, taking all of the funds into consideration. But the result of the audit showed that Williams had used the funds of the borough for his own purposes, and had taken advantage of his position, as cashier of the bank, to borrow funds by means of an overdraft created by him, with which to respond to the demands made upon him as treasurer of the borough. An overdraft on a bank is in the nature of a loan, not made in a creditable way, and is regarded with scant favor: Peterson v. Bank, 52 Pa. 206. This overdraft being then in the nature of a loan, to whom was it made? The bank sets up the claim that it was made to the borough; but how could that be? The borough authorities made no application for a loan, and authorized none to be made. Obtaining funds by means of an overdraft was manifestly the act of Williams, for his own relief. As custodian of the borough funds he was undoubtedly short; and, as cashier of the bank, he evidently created an overdraft in order to relieve himself in his capacity as treasurer.

In the official settlement by the borough auditors of the accounts of Williams, he was charged with all the moneys which he was shown to have received as treasurer, and was credited with all sums which he paid out

by order of the proper authorities of the borough. Among the items which were thus credited to Williams as having been paid by him out of the borough funds, were the warrants set out in schedules "A" and "B" of the original bill, and the check drawn by Williams in favor of the Southern Heat, Light & Power Company, and the bonds and coupons set out in exhibit "C;" these vouchers constituting the subject matter of the present controversy.

The bank seeks to overthrow the settlement made by the auditors, and sets up the claim that, in so far as these particular items are concerned, the payment by it of Williams' checks as treasurer for these amounts, was not the payment of funds advanced by it to Williams; that is, of funds advanced to him through the creation of an overdraft; but that such payments were loans to the borough, and that Williams should not therefore have been allowed credit by the auditors for the payment of these items. There are cogent reasons against the soundness of this position assumed by the bank. In the first place, it is directly opposed by the facts as set forth in plaintiff's ninth request, approved by the court below, as follows: "During the period from March 11, 1907, to September 6, 1907, all of the various warrants, bonds and interest coupons set out in Exhibits 'A,' 'B,' and 'C' of the original bill were presented for payment to Mr. Williams as Borough Treasurer, and were paid by him as such Treasurer and the amounts thereof were entered by him in the Borough cash book as disbursements." If then these payments were made by the treasurer, he was entitled to credit in his account for them. If Williams was entitled to credit for the payment of these items, then of course the bank was not entitled to claim credit for the same items, for that would be to allow a double credit, and would subject the borough to a double charge for payment of these items. It therefore follows that if the bank advanced money to Williams to enable him to meet his obligations as treasurer, it must look to him for repayment of the amount, and not to the borough.

We think the facts of this case bring it squarely within the principle of the decision in First National Bank v. New Castle, 224 Pa. 285. The only distinction between that case and the present one, is that the defaulting treasurer there gave a note to the bank for the money loaned; while here, availing himself of his position as cashier of the bank, he overdrew his treasurer's account to make good his defalcation as treasurer. In the case cited, our Brother Brown said (p. 291): "As stated, he (Blevins, the city treasurer) was unquestionably a defaulter at the time he applied to the bank for the money. Suppose at the time he borrowed the money he had done so for the purpose of settling with the city and turning over its funds in his hands to his successor in office; if the amount lent to him by the bank had been sufficient to make up his default, he would have been able to pay over to the city all of its moneys in his hands, and, in turn, would have received from it whatever security he had given for the faithful discharge of the duties of his office. After a settlement so made, can it be seriously contended that the city should subsequently be compelled to pay to the bank the money borrowed by its defaulting treasurer for the purpose of covering up his default, simply because the money borrowed by him had been placed to his credit as treasurer of the city and paid over by him as a part of what he owed it? The mere suggestion of such a situation, possible at any time, it seems to us, is sufficient in itself to prevent recovery by the appellee. But even if he had not been a defaulter, a rule of public policy imperatively requires that, for the safety of municipalities, no one of its ministerial officers shall be permitted to impose liability upon it in the way Blevins is alleged to have done. It is because of the disastrous results that may come to municipalities if they are held impliedly liable for moneys borrowed by a municipal treasurer, without the knowledge, consent or approval of the municipality, even if placed to his official credit, that a recovery cannot be permitted in this case."

This language anticipates closely the facts in the present case. In its opinion upon the exceptions, the court below suggests that the borough officials knew, as is shown by their minutes, that large overdrafts existed in the bank long prior to Williams' known default; and that the minutes of the borough council show no repudiation of the overdrafts until after the defalcation was made known. We have carefully examined the testimony in this respect, and find that the minutes referred to are as follows: "May 17, 1907. A report was read from Mr. Williams, the borough treasurer, which was as follows: 'Balance in Paving and Sewer Account $16,929.99; balance in Sinking Fund Account $3,309.85; overdraft in First National Bank $11,979.69.' Mr. Patterson wanted to know how the borough had an overdraft in the First National Bank when the borough had no account there, in so far as the treasurer had not been instructed to borrow money from the bank. After some discussion Mr. Riley moved that the treasurer's report be laid on the table. No action taken on this motion."

It will be noticed that this report showed that the borough had on hand in cash in two accounts, $20,239.84; and that notwithstanding this fact, an overdraft in the bank was reported upon another account of $11,979.69. Even if this were accepted as correct, it showed a balance of $8,260.15, in the treasurer's hands to the credit of the borough. But the report was not satisfactory, and one of the councilmen asked how an overdraft in the First National Bank could be possible when the borough had no account there, and the treasurer had not been instructed to borrow money from the bank. The minutes show no answer to this pointed question. Certainly, no inference of an acquiescence upon the part of council, in the fact of the overdraft, can be properly drawn from this occurrence. Then, upon August 16, 1907, the minutes show "Motion carried that the matter of an overdraft on the Sheraden Bank be referred to the Finance Committee for satisfactory settlement." At this meeting of

councils a resolution was passed requesting the resignation of the treasurer for neglect of his official duty; and at the meeting of September 6 following, he was removed.

We can find nothing in the minutes to show that the council ever authorized or ratified or acquiesced in the alleged overdraft in the bank as reported by Mr. Williams, the treasurer. It cannot be pretended that Williams had any authority to borrow money for the borough. The evidence shows that he was a defaulter, and that the money he took from the bank was used to cover up his defalcation by paying the warrants of the borough drawn upon him as treasurer. The warrants would have been met by the funds of the borough in his hands, if he had not embezzled the money; so that the only reasonable inference is that Williams' prime purpose in obtaining the loan from the bank, through the irregular method of an overdraft, was to screen himself.

In their argument, counsel for the bank reiterate the statement that the warrants and vouchers in question were paid by the money of the bank. This is not correct in any sense which would give the bank a claim to ownership of these instruments; for, as we have pointed out, they were paid from the proceeds of the loan to the treasurer, through the overdraft. When the treasurer stamped the warrants and made them payable at the bank, he was thereby, to all intents and purposes, drawing his check for their payment upon the bank. And this payment was made out of the loan made by Williams as cashier to Williams as treasurer, manifestly to take the place of other funds which he had misappropriated, and which but for that misappropriation would have been in his hands to meet the demands of the borough. Suppose that, instead of creating the overdraft, Williams had given his note to the bank and thus obtained the same amount of credit. Would it be suggested for a moment that, because the bank paid checks on this fund, to meet the borough warrants, it was thereby advancing money to the borough? Certainly not. The difficulty arises solely

out of the defalcation. If Williams had made good the overdraft, or had made secure the loan which he thus obtained from the bank, it is safe to say that it never would have thought of laying claim to the cancelled vouchers, which Williams produced to the auditors, and for which he was by them allowed credit for the amount on his account with the borough. We are clear that there was no liability upon the part of the borough, for an overdraft in the account which the treasurer personally kept in the bank. Such an overdraft was a loan to the treasurer personally, and not to the borough. The court below was therefore in error in dismissing the original bill in this case, which prayed for the surrender to the borough of the paid warrants, and other vouchers for which credit was allowed by the borough auditors in the settlement of the account with the treasurer. These warrants and vouchers represented items of indebtedness which had been paid by the borough, and should therefore be in its possession to protect it against any future claims for the same debts. Williams as treasurer had no further interest in these vouchers, after the borough auditors had allowed him the amounts, represented by them, as credits on his account. After that time they were properly, in the possession of the auditors, as cancelled vouchers and as such should have been returned to the borough authorities. It also follows that the court below was in error in sustaining the cross bill, and directing the borough to pay to the bank the amount of the overdraft in the treasurer's account with it.

The decree of the court below is reversed, and it is ordered and directed that the cross bill be dismissed, and that the original bill filed in this case be sustained, and the prayer thereof be granted; and that the First National Bank of Sheraden be restrained from attempting to enforce payment of the sums represented by the warrants, check, bonds and coupons, for which credit has been allowed to the borough treasurer, in the settlement of his account by the borough auditors; and that the defend-

ants be required to deliver the warrants, check, bonds, coupons, etc., in question to the proper authorities entitled to the custody of the papers and records of the borough of Sheraden. The costs to be paid by the defendants in the original bill.