Trestrail, Admr., Appellant, *v.* Johnson, Sheriff.

Argued October 1, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Charles P. Larkin, Jr.,* with him *Kingsley Montgomery,* for appellant, cited: Sauvinet v. Maxwell, 25 La. 280; Pittsburgh v. Bank, 230 Pa. 176.

*D. Malcolm Hodge* and *John B. Hannum, Jr.,* of *Hannum, Hunter, Hannum & Hodge,* for appellee, were not heard.

OPINION BY MR. JUSTICE KEPHART, November 25, 1929:

Thomas W. Allison, sheriff of Delaware County, deposited in two banks money received in his official capacity, the accounts being styled "Thomas W. Allison, sheriff." He died during his incumbency and at the date of his death there was on deposit to such accounts $21,853.14. Immediately after his death the coroner of that county took over the duties of the office. These he performed until the governor appointed Abrams to fill the unexpired term of Sheriff Allison, and Isaac W. Johnson was elected for the regular term commencing the first Monday of January, 1926.

C. W. Trestrail, administrator c. t. a. of Sheriff Allison, claiming these funds with the right to administer them, demanded from the banks the money deposited to the account of "Thomas W. Allison, Sheriff." Sheriff Johnson made a similar demand in right of litigants, claiming the fund as official funds of the office. Both parties brought suit against the bank, and, on the latter's petition, interpleaders were decreed, with Trestrail, the administrator, as plaintiff, and Johnson, the sheriff, as defendant. The issue was to determine who was to receive the fund. The court directed the money turned over to Johnson, it appearing from the evidence that all was due from Allison to litigants. From the judgment this appeal has been taken.

The questions we are asked to decide are, first, whether the fund is a personal one belonging to Sheriff Allison, in the first instance, his estate and bond to answer its forthcoming when required; second, if the funds are

trust funds, have they lost their identity since the sheriff mingled them with his personal money; and, third, in any event, is the administrator the proper party to administer the fund, distributing it to the entitled litigants under an order of court?

Apparent confusion with respect to the status of this fund results from a failure properly to appraise the principles underlying our various cases wherein fiduciary funds or collateral matters relating thereto are brought into question. A correct appreciation of the value of these cases will aid in solving the problem before us.

It would appear that some of our cases are in conflict where the direct ownership of the fund was in controversy. For illustration: In Pittsburgh v. First National Bank, 230 Pa. 176, "X" made deposits in a bank in a representative or official capacity as "X, treasurer of S borough." We held that "an account thus opened with a bank by the treasurer of a municipality is the account of the treasurer and not that of the municipality,......the money which he deposits there is at his own risk"; and in Hunter v. Henning, 259 Pa. 347, "X" made deposits in a similar institution as "X" administrator of "Y," and "X," trustee of "Z." In holding these funds were no longer individual but trust funds, we said, "each deposit was a special appropriation by the defendant of trust funds in his hands; he had no property-right in either, neither could have been attached by his individual creditors, and, in case of failure of the bank, he would have been exempt from loss: German Nat. Bank v. Foreman, 138 Pa. 474."

Concerning the administration of trust funds, in Stair v. York National Bank, 55 Pa. 364, we held that "The administrator d. b. n. is the proper person to receive a deposit belonging to his decedent's estate and made by a deceased executor." In Sibbs v. Philadelphia Saving Fund Society, 153 Pa. 345, we held that "An administrator d. b. n. is not entitled to recover from a

bank the amount of a deposit which originally stood in the name of the intestate," or which had been received by his representative and so deposited. "The administrator de bonis non has nothing to do with the separate items making up the receipts of the accountant [an administrator]......*He cannot take moneys collected by him or standing to his credit as administrator,* for this would be to interfere with the settlement of the account and deprive the estate of the means of reimbursement for payments made and for services rendered: Slaymaker v. Farmers' Nat. Bank, 103 Pa. 616": Sibbs v. Phila. Saving Fund Society, supra. This was followed in Wagner's Est., 227 Pa. 466, and Parkin v. Safe Deposit Bank, 54 Pa. Superior Ct. 57. There might be some disagreement if these cases stood entirely on what the quoted text purports. The circumstances surrounding the question for decision in each case are of the utmost importance.

Generally speaking, in all cases where the ownership of the fund itself has been in dispute, and not the right to administer it, the court has been particular to do nothing which would disturb in the slightest the fund reaching its destined lawful end, without unnecessary risks that might come if a more liberal policy was adopted, it being conceded the fund was a trust or one that can be called such. In Hunter v. Henning, supra, we held that, as between the personal representative and third parties, while the representative might be regarded as the owner of the fund for its protection, yet where, by his act, there was a possibility of the funds being in jeopardy to the detriment of the trust estates, we kept them inviolable as far as that proceeding was concerned. The personal representative was committing an act (attempting to set off the trust funds against his individual liability) which would injure the trust estate, and by which he would personally benefit. To the same effect was Wilmarth v. Mountford, 8 S. & R. 124, where the trustee of an insolvent debtor sued to recover the price

of trust property which had been sold to a creditor of the insolvent. We refused to permit the creditor to set off a claim which he had against the debtor, when he was sued for the price of the property which he purchased. There the trustee was protecting the trust estate, while the creditor was trying to injure it through a preference which he would get if his claim were allowed in that suit. In holding the creditor could not set off against the demand of the trustee his claim against the trust estate, we said the trustee for that purpose was suing to recover his own property.

In Pittsburgh v. First National Bank, supra, the bank was trying to recover an overdraft traced into borough orders paid by its cashier, who was also treasurer of the borough, whose funds were depleted through misappropriation by the cashier. The bank was attempting to reclaim its money through these orders. The parties were endeavoring to shift the loss caused by this embezzlement. The equity of the bank was not as high as that of the borough, and it was made to suffer. The bank was bound to know, when an account is kept as treasurer of a borough or in some other fiduciary character, that when the officer draws checks in proper form he is lawfully performing his duties and the bank may honor the checks accordingly; but when against such an account it seeks to assert its lien for an obligation such as a loan, overdraft or note, it must know how it was incurred as a loan and for whom. It knew the fund was not the cashier's individual property, but was shown to consist in whole or in part of money which he held in a trust relation. It knew how the overdraft was occasioned, the officer's knowledge being that of the bank. Hence the bank could not charge such a loan against that account, nor could suit on the orders representing the same thing be fruitful of results: Nat. Bank v. Ins. Co., 104 U. S. 54; Bank v. Mason, 95 Pa. 113; Bank v. Alexander, 120 Pa. 476; Pa. T. & T. Co. v. Meyer, 201 Pa. 299. What we said in that case, so urgently relied

on, is therefore far from saying the funds were not trust funds; and in the Henning Case, we said, "If it be assumed that the legal title to the funds that are the basis of these demands was once in him [Henning]......he had divested himself of that legal [actual] title when he segregated them from his own funds in the manner he did, depositing neither in the bank as his own, but designating each in a way showing unmistakably to whom it belonged. In doing so he put it beyond his legal right to exercise any control whatever over either deposit, unless in his representative capacity." There are circumstances where the ownership of public funds may be deemed to be in the individual, but this is only for the purpose of protecting the funds and permitting them to remain within the control of the designated responsible officer of the cestui que trust, as in Swartwout v. Bank, 5 Denio (N. Y.) 555; and this case by no means holds that, because the fund may be regarded as that of an individual in one instance, it loses its character as trust funds, and when the ownership of the fund is in question, it should be so treated. This is so, even if, in a bank failure, the accounting officer is responsible for the loss. That is because the officer's obligation was not only to keep the fund safely, but to have it ready when the government called for it. Another instance of such a fund being regarded for particular purposes as that of the individual is where the officer of a municipality states an account of his stewardship, in which case he is charged with the total amount received from a designated source, or what should be received, as, for instance, taxes for the current year, and he is credited with disbursements and uncollected taxes. His bank account plays no part in the matter and for auditing purposes may be considered the accounting officer's money. But should that officer be insolvent, the hand of the law would be firmly laid on the money in that account as trust funds.

Such cases as Bank v. Alexander, 120 Pa. 476, where money was deposited to the account of a deputy treassurer, and Laubach v. Leibert, 87 Pa. 55, where the word "assignee" did not earmark a fund, are cases which do not bear on the fundamental principles which underlie the problem of the ownership of trust funds just discussed. They may rightfully be considered merely as determining the status of a deposit as between bank and depositor, leaving aside the question of the ultimate ownership. Deputy treasurer of what? Assignee of whom? Such an appendix to a name does not identify or earmark the fund so far as to affect the bank's contract with its depositor.

In the Pittsburgh Case, as in this case, the money was received by the treasurer as a result of the discharge of his official duties and was held by him in a fiduciary capacity, in the discharge of those duties; the relation established was not that of a mere debtor, but an express trust relation: Cameron v. Carnegie Trust Co., 292 Pa. 114; Controller's 52d Annual Report, 59 Pa. Superior Ct. 450.

Where the ownership of the fund is in contest, the designation "sheriff" would presumptively entitle it to be known as a trust account. Such presumption may be rebutted: Stair v. York National Bank, supra; Gaffney's Est., 146 Pa. 49; but the burden is on one claiming otherwise. Of course, if it appears the funds were not held in an official capacity, the fund would not be a trust by an individual, but the property of the administrator. In Erie v. Lamberton, 297 Pa. 406, an opinion by Mr. Justice SADLER, it was held that the addition of the words "clerk of courts" created a presumption that the funds were not personal deposits, but were trust funds, and the addition "clerk of courts" to the check was sufficient to charge the recipient with notice of the trust.

While the deposit slips that entered into the instant account were not definitely earmarked as belonging to

the sheriff, and, where one seeks to claim a portion of a fund, such earmarking is ordinarily necessary (Cameron v. Carnegie Trust Co., 292 Pa. 114), still, where trust funds are mingled with personal funds, under an account designated as a trust fund account, the entire mass will be considered as trust funds until the demands of the trust are satisfied. When dollars are traced into an account, the identical dollars need not be located. Where the agent has mingled his own property with that of the principal, the latter may reclaim from the admixture an amount equal to his own, although it may not be the same identical property: Webb v. Newhall, 274 Pa. 135, 137; Vosburgh's Est., 279 Pa. 329; Conneautville Bank's Assigned Est., 280 Pa. 545; L. R. A. 1916-C, 77; National Bank v. Insurance Co., 104 U. S. 54; Farmers' Bank v. King, 57 Pa. 202, 208. So that as far as Miller's Appeal, 218 Pa. 50, or Lebanon Bank's Assigned Estate, 166 Pa. 622, may have held otherwise, the above is the law to-day: Cameron v. Peoples' Bank of Maytown, 297 Pa. 551.

We are satisfied that the evidence in this case amply warranted the conclusion that the fund in question was the property of the litigants who had issued the execution, and was deposited by the sheriff by virtue of his office, and must be adjudicated as such. Here the funds were collected by a public officer as distinguished from money collected by a private individual, and the question remains as to who shall administer them.

The office of sheriff, with its manifold duties, has been evolved as a part of our common law system for the redress of grievances between individuals. When a member of the public seeks to recover a claim, the final step to reduce it to money is through that office; its officer executes the writ of process. People generally understand this, so regard the office, and have been taught for centuries that through it speedy satisfaction of their demands may be had. It is one department that must move swiftly to carry out its many duties, and to pre-

serve, in a measure, the confidence of the people in the government in which it moves. Not the man who occupies the office is looked to, but the office itself. It is in this legal channel that claims are placed and it is through this channel satisfaction is expected. Any effort from without to disturb the customary current of performance injures the system and lessens its effectiveness in the minds of those who are brought in contact with or have knowledge of it. To take moneys that have been collected through this agency and place them in the hands of a stranger to the system for distribution must, of necessity, challenge its effectiveness. The money here was procured through execution or process of the court; the funds should be in custodia legis, in an office which has existed time out of mind for their collection and disbursement.

Public policy demands that the control of funds in the possession of public officers remain in the channel created by law for their administration, unless some imperative reason exists to place them elsewhere.

Neither Sibbs v. Phila. Savings Fund, nor Wagner's Estate, relied on by appellants, supply such imperative reasons for a change. The reasons underlying these cases have been mentioned above. The administration of funds by private individuals acting as administrators or trustees, is to be regarded in some aspects differently from the administration of public moneys by public officers, or money secured by virtue of their office. There can be no difference in the relation of the particular individual, public or private, to the fund in question, and all legal obligations which flow from that relation would no doubt attach to all. There is a difference, however, in the administration of a fund or estate. The guide for trustees or administrators is largely the exercise of the fiduciary's best judgment within certain legal limitations. It is a personal concern up to the point of distribution. The administration of public funds secured through a public office is, on the other hand, largely gov-

erned by statute. Therefore, the reasoning employed to hold cash in a bank in the hands of the estate of the administering officer does not apply to a statutory administrator, such as a sheriff, clerk of court or other public officer.

The chief reason in the cases relied on by appellant for their holding was the right to collect claims for services and to be reimbursed for disbursements. Funds collected from execution carry with them their own specific fees and costs of execution. Payment for the services of the sheriff is provided in fees and commissions by statute, and the disbursements for printing and so forth are likewise taken care of. These items are the first to be liquidated if a sale takes place, or money is received; they are no part of the debt collected. The fees and other expenses are charged separately on each writ. In some counties the latter are paid by the sheriff and belong to the sheriff, but are charged on the writ; in others, including Delaware, the counties pay all the charges of executing the writ and secure all the fees. There are in this case no disputed or uncertain questions. If there are commissions which belong to the deceased sheriff, the court may order such fees turned over to his administrator when an audit or other distribution is made. The reasoning of the two cases relied on does not apply to the type of case before us.

There are other reasons for keeping the funds in the sheriff's office for distribution. The money remains in the same court in which it originated. If it is turned over to an administrator, it goes to another court where the law has provided six months' delay before litigants receive their claims. The sheriff's office requires speedy distribution of funds like these. It is perhaps its chief claim for effectiveness.

We here hold that when the sheriff in office dies, his successor is the proper person to take over all the moneys received by him by virtue of his office, and through the form provided by law for sheriffs to distribute the money to the litigants entitled to receive it. (Allegheny

Bank's App., 48 Pa. 330), the bondsmen of the deceased sheriff to be released pro tanto by such payment. The fact that a coroner or appointed sheriff filled the office before the present sheriff litigant is immaterial and does not disturb our conclusion, nor does the fact that the sheriff's bond stands good for the fund.

The decree of the court below is affirmed.