## Stall *versus* Meek.

1. Stall, in 1857, about leaving home, left claims due him, with Meek for collection and from the proceeds to pay a debt due Braden and the remainder to Stall's wife. This constituted the wife Stall's agent.

2. During Stall's absence Braden brought suit; the wife asked Meek for money to pay; he said it should not trouble her; he would pay Braden; he afterwards told her he had paid. Braden recovered judgment, which Stall, on his return in 1867, was compelled to pay. In 1869, he sued Meek, who pleaded the statute. The court charged: "Unless there was fraud on plaintiff in concealing the receipt of the money, the statute would be a bar; anything said to the wife not communicated to plaintiff would not be such fraud as would prevent the bar; the concealment must be practised on the husband or his constituted agent." *Held* to be error, being calculated to mislead the jury as to the agency of the wife.

November 14th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* No. 119, to October and November Term 1871.

The action in this case was commenced January 23d 1869, before a justice of the peace, by Samuel Stall against James Meek, to recover the proceeds of a note which the plaintiff had left with the defendant for collection, with instructions, as he alleged, to pay the proceeds to one D. W. Braden, to whom the plaintiff was indebted, and the balance, with the proceeds of other accounts also left with Meek for collection, to Stall's wife. The note was paid to the defendant, but he did not pay Braden, who compelled the plaintiff to pay the debt due him. The justice gave judgment for the plaintiff; the defendant appealed to the Common Pleas.

The plaintiff there filed a declaration in assumpsit; the defendant pleaded non assumpsit and payment, &c., and non assumpsit *infra sex annos.*

The cause was tried, April 14th 1871, before Gilmore, P. J.

The plaintiff testified that he had held a note for $40 against Joseph Murray, dated in February 1857, payable in four or six months; that he was about going to California, and on the 12th of February 1857, he put the note into the hands of the defendant to collect and pay Braden; he put also into his hands, for collection, a book of accounts, amounting to from $50 to $100, after paying Braden, the balance of the collections was to be paid to plaintiff's wife. Whilst he was away, process, at the suit of Braden, was served on his wife at his house, and judgment recovered against him. He returned home in 1867, when a scire facias on Braden's judgment was issued; plaintiff took out a subpœna for Meek as a witness to appear at the hearing on the sci. facias to prove what he heard from Braden, and he asked him if he had not a receipt from Braden; defendant said he would not attend at

[Stall *v.* Meek.]

the trial; judgment was rendered against plaintiff, and he was compelled to pay it, amounting then to about $70.

He gave other evidence, corresponding with his own testimony, as to leaving the note and accounts with the defendant, and his instructions with regard to them.

The wife of plaintiff testified that Meek paid her money he had collected from the book accounts, but frequently said he would not pay her the proceeds of the note; that he intended to pay Braden with that. After service of Braden's process, she went to the defendant to get money to pay him; the defendant would not give her any, saying her husband had left the note with him to collect and pay Braden, and that he was going to pay Braden himself: she told him her husband had been sued by Braden; he replied she need not bother herself any more, he would pay Braden; about a month afterwards, in answer to her inquiry, he said he had paid Braden and taken his receipt; he told her he had collected all he could from the books, and he gave them to her; she brought suit on a number of apparently open accounts against persons who produced receipts from the defendant, and she had to pay the costs.

The defendant testified that the wife of the plaintiff had got from him nearly all the money he had received.

The court charged: that unless the defendant practised a fraud upon the plaintiff, by concealing from him the receipt of the money, the statute would be a bar; and anything said to the wife of plaintiff or other persons not communicated to the plaintiff, would not constitute such a fraud as would prevent the running of the statute. The concealment must be practised upon the plaintiff or his constituted agent.

The verdict was for defendant.

The plaintiff took a writ of error and assigned the charge for error.

*R. W. Downey,* for plaintiff in error.

*Wyly* and *Buchanan,* for defendant in error.

The opinion of the court was delivered, January 9th 1872, by

WILLIAMS, J.—The complaint of the charge in this case is well founded. Even if correct in the abstract, it was erroneous as applied to the evidence, and calculated to mislead the jury. The evidence clearly tended to show that the defendant was instructed to pay the plaintiff's indebtedness to Braden out of the money he might receive on the note and accounts left with him for collection, and to hand the residue to the plaintiff's wife; and if so, she was the plaintiff's agent to receive the money, and the defendant's declarations to her, if made as alleged, were made " to his

[Stall *v.* Meek.]

constituted agent." There was not a particle of evidence ten - ing to show that the alleged declarations were not communicated to the plaintiff. On the contrary, the reasonable inference is that they were; and, besides, there was evidence from which it may be fairly inferred that the wife had informed the plaintiff of the defendant's declaration that he had paid Braden. If not, why did the plaintiff, when served with the *sci. fa.* to show cause why execution should not issue, take out a subpœna for the defendant, for the purpose of proving the payment of the judgment, and why did he ask him if he had not a receipt from Braden? It is true that the court did not in express terms charge the jury that there was no evidence that the wife was the plaintiff's agent; and that anything said to the wife, because not shown to have been communicated to the plaintiff, would not constitute such a fraud as would prevent the running of the statute. But the jury may have readily inferred that this was the meaning of the court, from the language of the charge as applied to the evidence. If the court did not intend to be so understood, why charge that "anything said to the wife of the plaintiff, or other persons, not communicated to the plaintiff, would not constitute such a fraud as would prevent the running of the statute;" and that "the concealment must be practised on the plaintiff or his constituted agent?" Is it not clearly implied by this language that there was no evidence that the wife was the agent of the plaintiff, or that the defendant's declarations to her had been communicated to him? Whether this was the meaning of the court or not, we think that the charge was susceptible of this construction, and that it was calculated to mislead the jury. The evidence tended to show that the wife was the plaintiff's agent, and that the declarations alleged to have been made to her by the defendant were communicated to him. The case should have been submitted to the jury upon instructions applicable to the evidence, and not upon instructions applicable to a state of facts which the evidence did not tend to establish.

Judgment reversed, and a *venire facias de novo* awarded.