## Assigned Estate of the Solicitors Loan and Trust Company.

*Trusts and trustees—Banks and banking—Mingling of trust funds with general deposits.*

Where money, received by a trust company as trustee, is not kept distinct nor invested in any specific way, but is mingled with the general mass of money on deposit and used in the general banking business, and there is no means of tracing or ascertaining its identity in any form or species of property, the cestui que trust is not entitled to a preference over general creditors in a distribution of the assigned estate of the trust company.

Argued Dec. 16, 1896.   Appeal, No. 132, Oct T., 1896, by T. De Witt Cuyler and Effingham B. Morris, assignees, from the order and decree of C. P. No. 2, Phila. Co., Dec. T., 1895, No. 1132, directing the assignees of the Solicitors Loan and Trust Company to set aside the sum of $807.54, to be held by them as a trust fund for the benefit of the estate of John Cobson, a lunatic.  Before WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.   Reversed.

Petition to have funds, placed with a trust company, set aside as a special trust fund.

Frederick K. Cobson was appointed by the court of common pleas, No. 4, Phila. Co., committee of the person and estate of John Cobson, lunatic, on October 21, 1895, and security in the sum of $10,000 required.  He thereupon arranged with the Solicitors Loan & Trust Company to furnish the required security upon the deposit with said company, as indemnity, of all moneys, securities and proceeds from the same belonging to the estate of the lunatic, under the provisions of an indemnity agreement, and the same not to be withdrawn except by order of the court and on orders or checks countersigned by one of the officers of said company.

On December 24, 1895, the Solicitors Loan & Trust Company was approved as surety by the court and executed the requisite bond, receiving, as indemnity, from Frederick K. Cobson all cash and securities of the lunatic's estate valued at $4,691.26, of which $807.54 was in cash and the balance in securities.

An assignment to Effingham B. Morris and T. DeWitt Cuyler, for the benefit of creditors, was made on January 3, 1896, by the Solicitors Loan & Trust Company.

An order of the court of common pleas, No. 4, was granted to Frederick K. Cobson on April 7, 1896, whereby he was authorized to sell certain securities and expend the proceeds from the same in the payment of medical bills, board and other proper charges connected with the care and maintenance of the lunatic, and in addition thereto allow the sum of $10.00 per week for his future maintenance and support.

Upon application to the Solicitors Loan & Trust Company for the cash deposit of $807.54, the same was not paid over on the ground that it was not sufficiently earmarked to form a trust fund for the estate of the lunatic. The committee, Frederick K. Cobson, contended that such was his intent upon placing the same with the company, not that it should be regarded as an ordinary deposit.

A petition representing the above facts, together with the contentions of the committee of the lunatic was presented by Frederick K. Cobson to the court below and by a decree of that court the petition was granted and the assignees of the Solicitors Loan & Trust Company ordered to set aside the sum of $807.54 to be held by them as a trust fund for the benefit of the estate of John Cobson, lunatic.

From this decree, directing the setting apart of the sum of $807.54 as a trust fund, the appeal is taken by the assignees above.

Prayer of the petition granted and decree entered directing the assignees to set apart $807.54 to be held by them as a trust fund for the benefit of the estate of John Cobson, a lunatic. Assignees appealed.

*Error assigned* was, entry of decree, reciting same.

*Richard S. Hunter,* for appellants.—Even if the averments of the petition had been proved it is clear that the assignees cannot set apart, in a special trust, money deposited in the general fund of the company. This is decided in the following cases : Thompson's Appeal, 22 Pa. 16 ; Bank v. King, 57 Pa. 202 ; People's Bank Appeal, 93 Pa. 107 ; Carmany's Appeal,

166 Pa. 622. The latter case cannot be distinguished from the present one.

*R. J. Byron,* with him *J. S. Clark,* for appellee.—It is an elementary principle that trust funds may be followed through various conversions so long as their identity can be established. The assignees of the insolvent company represent the company itself as its creditors. These creditors are entitled to the assets of the insolvent company only, but not to any trust funds that belong to other parties.

This general subject is considered in full in an able opinion by SEYMOUR, J. in Bank v. Dowd, 38 Fed. Rep. 172, where the learned judge suggests four principles.

The real issue is, in what cases can a trust fund be followed where it has been mingled with other moneys of the trustee? The leading case is Knatchbull v. Hallett, L. R. 13 Chancery, 696; Bank v. Ins. Co., 104 U. S. 54; Bank v. King, 57 Pa. 202; Freiburg v. Stoddard, 161 Pa. 259; Frelinghuysen v. Nugent, 36 Fed. Rep. 229; Peters v. Bain, 133 U. S. 670. On the general subject see also Bank v. Ins. Co. 104 U. S. 54, and Cavin v. Gleason, 105 N. Y. 256.

OPINION BY WILLARD, J., January 18, 1897 :

The facts of this case are to be gathered from the petition presented by the appellee in the court below, and the agreement attached thereto and made part thereof.

Upon this petition the appellant rested without denial by answer or otherwise, and upon it the court acted and made the order from which this appeal is taken.

The cash item of eight hundred and seven dollars and fifty-four cents ($807.54) is all that is immediately involved in this controversy. When the money and securities were deposited with the trust company, it was agreed between the company and the appellee that " the proceeds of all securities, and all securities and moneys belonging to said estate shall be deposited with the said parties of the first part (the trust company), and shall be and remain in their custody and control until the same shall be duly and legally distributed and awarded by the court having jurisdiction of the accounts of the said party of the second part, *except such payments as may be legally required in*

*administering the estate,* and then shall be paid out to such person or persons as the same may be directed to be paid to by the award, order and decree of said court." It further appears from the petition that the money and securities were "not to be withdrawn except by order of the court and on orders or checks countersigned by one of the officers of the company."

In construing the agreement of the parties we treat the language as understood in connection with the business in which the parties were engaged at the time of the transaction. The money was placed under the control of the trust company. Such payments as were legally required in administering the estate were to be made upon the order of the court and upon checks. Where would the money be placed in order to answer and pay checks? Would it be sealed up in a package with the name of the estate marked thereon? Or would it naturally be deposited and mingled with the other funds of the company for the purpose of answering and paying orders or checks as presented?

When the order of court of April 7, 1896, was made, directing the payment of certain bills for medical attendance, medicines, board and other proper charges incident to the management of the estate, the property of the trust company had been in the hands of the assignees for the benefit of creditors for over three months. The assignees answered that they could not pay over the sum of eight hundred and seven dollars and fifty-four cents ($807.54) cash " on the ground that said money was not sufficiently earmarked so as to form a trust fund for the estate of the lunatic; and on the further ground that the said money, when placed in the hands of the Solicitors Loan and Trust Company, was entered by the company on its books as a deposit in the name of Frederick K. Cobson, committee of John Cobson."

The above language is quoted from the petition. While it is true that the petitioner further states " that he did not agree or consent that said cash should be deposited in the ordinary way, or be regarded as an ordinary deposit," we are of the opinion, under all the facts, that the moneys of this estate amounting to eight hundred and seven dollars and fifty-four cents ($807.54) were legitimately deposited and mingled with the other moneys of the trust company, and at the date of the assignment the trust company was debtor to the estate to that extent as an ordinary depositor.

The rule of law that trust funds may be followed through various conversions so long as their identity can be established by sufficient and proper earmarks, is a salutary one, and is sustained and approved by our Supreme Court in numerous decisions.

To the other rule which allows the *cestui que trust* preference over other creditors, where moneys of an insolvent trustee for distribution are mingled with his, unmarked and undefined, we do not assent. This rule once established opens the door to a flood of alleged preferred claims, depending for their establishment upon oral testimony as to the intent and agreement of the parties at the time of the deposit, and when carried to its logical conclusion in ordinary cases, would leave the honest unsecured creditors at the mercy of the unscrupulous. Let him who claims preference over others out of the funds of an insolvent trust company show the plain impress of some earmark upon the money or thing claimed to be preferred, and not leave the identity to the uncertainty of human recollection; otherwise, let him take his chances with others to share in the common fund to be distributed.

This is the rule in Pennsylvania, and we see no good reason for departing from it.

The facts in this case are not exceptional and we cannot hold the appellee entitled to preference over the other creditors of the trust company without an unwarranted departure from the rule requiring reasonable identification.

We cannot distinguish this case from Carmany's Appeal, 166 Pa. 622, in which case it is decided " where money received by a bank as trustee is not kept distinct nor invested in any specific way, but is mingled with the general mass of money on deposit and used in the general banking business, and there is no means of tracing or ascertaining its identity in any form or species of property, the *cestui que trust* is not entitled to a preference over general creditors in a distribution of the assigned estate of the Bank." To the same effect is People's Bank's Appeal, 93 Pa. 107 ; Bank v. King, 57 Pa. 202 ; Thompson's Appeal, 22 Pa. 16 ; in which latter case it is held " whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held, in its new form, liable to the claim of the *cestui que trust ;* but the

right of pursuing it fails when the means of ascertainment fail; and this is the case when the subject-matter is converted into money or confounded with a mass of property of the same description."

We see nothing in the facts of this case to distinguish it from the above cases. The specification of error is sustained and the order of the court below of June 18, 1896, directing Effingham B. Morris and T. DeWitt Cuyler, assignees of the Solicitors Loan & Trust Company, to set aside the sum of $807.54 to be held by them as a trust fund for the benefit of the estate of John Cobson, a lunatic, is overruled and set aside.