# Mehler's Appeal.

Argued September 27, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. C. Pettit,* with him *J. A. Stranahan* and *Austin L. Staley,* for appellants.—Appellants are entitled to be preferred to other creditors to the extent that the fund was increased: Cameron v. Trust Co., 292 Pa. 114; Conneautville Bank's Assigned Est., 280 Pa. 545.

The identical dollars need not be identified: Trestrail v. Johnson, 298 Pa. 388, 397.

*Thos. H. Armstrong,* with him *William A. Schnader,* Attorney General, and *Shippen Lewis,* Special Deputy Attorney General, for appellee.—The court below found as a fact that the treasurer appropriated to his own use the moneys received from the sale of the stock, and that there was no increase in the assets of the trust company.

On the adjudication of an account by the secretary of banking, the findings of fact supported by evidence have

the weight of a verdict of a jury: Cameron v. Bank, 297 Pa. 551; Rokeach v. Polish Co., 295 Pa. 366; Glenn v. Trees, 276 Pa. 165.

The means used are immaterial if the result is the wrongful abstraction of money from the bank without its actual knowledge and converting the same to the use of the abstractor: 1 Morse on Banks & Banking, section 17; Maryland Casualty Co. v. Trust Co., 258 S. W. 584.

The mere fact that a trust ex maleficio is established does not eliminate the requirement of locating the trust property: Freiberg v. Stoddard, 161 Pa. 259; Thompson's App., 22 Pa. 16; Fisher v. Davis, 278 Pa. 129; Com. v. Trust Co., 250 Pa. 378; Fisher v. Bank, 77 Pa. Superior Ct. 558.

OPINION BY MR. JUSTICE DREW, November 28, 1932:

This case arises out of the insolvency of the Dollar Title and Trust. Company of Sharon, the facts relating to which are set forth in the opinion filed herewith in the appeal of the Metropolitan Life Ins. Co., 310 Pa. 17. The present appeal is from an order of the court below, overruling appellants' exceptions to the account of the secretary of banking, who had disallowed appellants' claim to be preferred over the depositors in the distribution of the assets of the trust company to the extent of $7,828, less a credit of $350.14.

There is no dispute as to the facts of the transaction out of which appellants' claim arises. Briefly stated, they are as follows: On November 19, 1929, appellants borrowed $1,200 from the trust company on their joint note, pledging as collateral security for the loan a certificate for 100 shares of Pennsylvania Railroad Company stock. By various payments the amount of this debt was reduced, and on January 21, 1930, the balance due was $350.14. On that day, without the consent or knowledge of appellants, the stock which they had pledged was sold, for the account of the trust company, by brokers in Pittsburgh. On the same day the treasurer

of the trust company, who had ordered the sale of this stock, stole from the trust company $7,828, a sum equal to the proceeds of this sale, and debited the account of the Mellon National Bank, its Pittsburgh correspondent, with a like sum. The following day the proceeds of the sale were credited, as a collection item, to the trust company's account in the Mellon National Bank. On September 13, 1930, the note signed by appellants was marked paid on the books of the trust company. Until the above facts became known, after the closing of the trust company on November 13, 1930, appellants supposed that the note remained unpaid, and that the certificate representing the pledged stock was still in the possession of the trust company, as they had made no further payments on account of principal, and had paid interest on the debt for a period extending beyond that date.

The only question raised by the assignments of error, according to the statement of questions involved, is whether appellants are entitled to recover, as preferred creditors, the balance of the proceeds of this unauthorized sale of their stock, after deducting $350.14, the sum which was credited as a final payment on the note.

By its wrongful and unauthorized sale of the securities pledged by appellants, the trust company was guilty of a conversion (see Neiler v. Kelley, 69 Pa. 403; Work v. Bennett, 70 Pa. 484; Van Voorhis v. Rea, 153 Pa. 19; Gervis v. Kay, 294 Pa. 518), and appellants were thereafter entitled to charge the trust company as a trustee ex maleficio of any property in its hands which it received as the proceeds of its wrongful act: Pioneer Mining Co. v. Tyberg, 215 Fed. 501; Bank v. Barry, 125 Mass. 20; Bank v. Johnson, 51 Neb. 546; Newton v. Porter, 69 N. Y. 133; Fur & Wool Trading Co. v. Fox, 245 N. Y. 215; Preston v. Moore, 133 Tenn. 247. See 19 Harv. L. Rev. 511, 514; 37 Yale L. J. 654. But the right to a priority over other creditors in the distribution of the assets of the trust company is not conferred upon appel-

lants by the mere conversion of their property; it depends, rather, upon their ability to show that property in the possession of the trust company at the time it closed its doors was obtained as a result of the conversion and is therefore subject to a trust in their favor. In other words, to be entitled to priority, appellants must trace the proceeds received from the conversion and identify them as contained in some specific fund or property in the possession of the trust company at the time it was taken over by the secretary of banking: Carmany's App., 166 Pa. 622; Com. v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372; Webb v. Newhall, 274 Pa. 135; Conneautville Bank's Assigned Est., 280 Pa. 545; Cobson's Est., 3 Pa. Superior Ct. 244; Lifter v. Earle Co., 72 Pa. Superior Ct. 173. See Miller's App., 218 Pa. 50. Once the proceeds have been traced into some fund, the entire fund is subject to the trust until the amount wrongfully placed in it has been repaid, and, consequently, appellants are entitled to that fund to the full extent of the proceeds of their property which went into it. It is not necessary that the very dollars received be identified, for it is the identity of the fund, not of the bank notes or pieces of coin that went into it, that controls: Farmers' & Mechanics' Bank v. King, 57 Pa. 202; Webb v. Newhall, supra; Vosburgh's Est., 279 Pa. 329; Conneautville Bank's Assigned Est., supra; Trestrail v. Johnson, 298 Pa. 388. However, the trust attaches only to the lowest balance in the fund at any time during the period between the placing of the proceeds therein and the closing of the trust company, for only to that extent can the proceeds be identified as contained in the fund as it presently exists: Groff v. City Sav. F. & T. Co., 46 Pa. Superior Ct. 423; Schuyler v. Littlefield, 232 U. S. 707; In re Dunn & Co., 193 Fed. 212; Powell v. Missouri Co., 99 Ark. 553; Chase & Baker Co. v. Olmsted, 93 Wash. 306; James Roscoe (Bolton) Ltd. v. Winder, [1915] 1 Ch. 62. See Miller's App., supra; Com. v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378. Of course,

if there has always been an amount in the fund equal to or greater than the proceeds of appellants' property which went into it, appellants are entitled to full satisfaction: Webb v. Newhall, supra; Vosburgh's Est., supra; Conneautville Bank's Assigned Est., supra; Trestrail v. Johnson, supra.

Our recent decision in Cameron v. Carnegie Trust Co., 292 Pa. 114, far from doing away with the requirement that the claimant must trace the proceeds of the wrongful act to some fund to which the trust ex maleficio can attach, as appellants seem to contend, is fully in accord with the principles stated above. In that case it appeared that the bank which had been taken over by the secretary of banking had received in cash, while insolvent, only a week before it closed, the sum which the claimant contended it held as trustee ex maleficio. The bank, from the time it wrongfully received the money to the moment it suspended business, always had cash assets in excess of the sum thus received. The claimant, therefore, was rightfully entitled to a preference in the distribution of the bank's assets to the full amount of its claim, as the fund into which the proceeds of the wrong were traceable had always thereafter exceeded that sum.

However, the secretary of banking, who has filed a brief on behalf of the depositors, who are not otherwise represented, contends that none of the proceeds of this conversion ever came into the hands of the trust company, but that the defaulting treasurer of the institution received the proceeds and used them for his own purposes.

When the facts surrounding the transaction are considered, it becomes apparent that this position is untenable. The treasurer accomplished his theft from the trust company before the proceeds of the sale of appellants' stock reached its account in the Mellon National Bank, and it was not until they were paid into that account that they were received by the trust company. The period of time separating the theft by the treasurer from

the receipt of the funds by the bank is most material, and cannot be disregarded. It is argued that the treasurer knew the exact amount of the proceeds of the sale of appellants' stock before he took the funds of the bank. This may be true, but it cannot alter the fact that the benefits of the sale were not deposited in the trust company's account until the day after the treasurer had embezzled its funds. Under such circumstances we can see no ground for argument that the treasurer, instead of the trust company, received the proceeds of the sale. It was impossible for him to take from the trust company funds which the latter had not yet received.

In the instant case the entire proceeds of the conversion of appellants' property are shown to have gone into the trust company's account in the Mellon National Bank. There has been no attempt to trace them further. Since the case goes back for further hearing, appellants may, if they find it necessary and are able to do so, trace any funds taken out of the account into some specific fund or property which came into the hands of the secretary of banking, for the purpose of fixing them with the equity of the trust. Appellants are entitled, by an application of the principles stated above, to receive from that account, in preference to other creditors, an amount equal to their claim, or, if the balance of that account ever went below the amount of their claim, to the lowest balance thereof at any time after the proceeds of the conversion had been deposited therein. Inasmuch as the record before us does not disclose the state of the account in the Mellon National Bank between January 22, 1930, and the closing of the trust company on November 13th of that year, we are unable to determine to what extent, if any, appellants are entitled to the preference which they seek to establish.

The order of the court below is reversed, and the case is remanded for further disposition in accordance with the views expressed herein.

See case immediately preceding.