## In re Merion Title and Trust Company. No. 1

*Aaron S. Swartz, Jr.*, and *Desmond J. McTighe*, for Secretary of Banking.
*S. H. McLaughlin* and *E. J. Pennell*, for exceptant.

KNIGHT, J., June 2, 1933.—We adopt the following statement of the facts, as set forth in the brief of counsel for the Secretary of Banking:

On October 21, 1925, Harry B. Weld, hereinafter called the exceptant, and Mary M. Weld, his wife, executed a mortgage to The Merion Title and Trust Company of Ardmore, hereinafter called the accountant, in the sum of $9,000, secured upon premises 511 Essex Avenue, Narberth, Pa. The mortgage was payable within 3 years thereafter. On March 9, 1926, the mortgage was assigned by the bank to Continental American Life Insurance Company, hereinafter called the insurance company. Between March 9, 1926, and October 15, 1931, the interest due on the mortgage was paid by the exceptant to the bank, which remitted the same to the insurance company. On October 20, 1928, payment of the principal of the mortgage was extended to October 21, 1931, by agreement between the insurance company and the exceptant. In September 1931, a bill for $9,275, including the principal of $9,000 due October 21, 1931, interest of $270 due October 21, 1931, and a satisfaction fee of $5, was received by the exceptant from the bank. On or about October 6, 1931, the exceptant called upon M. P. Claney, the then vice president of the bank, for the purpose of securing an extension of the mortgage for another 3 years, upon the payment of the interest due thereon and the further payment of the sum of $1,000 in reduction of the principal, and on that date the exceptant delivered to Mr.

Claney his check for $1,000, drawn upon his account at the Girard Trust Company, payable to the Merion.

On October 16, 1931, the bank wrote to the exceptant, acknowledging the receipt of his check and advising him that it had written to the insurance company and that, inasmuch as the manager of the insurance company's mortgage department would not be in his office until the early part of November, the bank was unable to advise the exceptant whether the insurance company would agree to the proposed extension. On October 17, 1931, the insurance company wrote to the bank and stated that it would be willing to renew the mortgage for 3 years, if $2,000 instead of $1,000 should be paid on account of the principal. On October 20, 1931, the bank wrote to the insurance company and stated that it would appreciate an extension of the mortgage for 3 years upon payment of $1,000 at the signing of the agreement and the payment of $1,000 over a period of 3 years, in semi-annual instalments of $200 each. On October 27, 1931, the insurance company replied to the bank that it would prefer to have the exceptant reduce the mortgage by payment of $2,000 on account, as it did not feel that its executive committee would approve an $8,000 loan on the property at that time. On the day after this letter was written, the Secretary of Banking took possession of the Merion. On October 9, 1931, the bank endorsed the exceptant's check for deposit to its own account at Philadelphia National Bank and on the same day drew its treasurer's check, payable to the order of its mortgage department, in the sum of $1,000, which check was never presented by the mortgage department for payment. The insurance company never received the sum of $1,000 in reduction of the principal of its mortgage.

To the above statement should be added the thirteenth paragraph of the stipulation of facts filed, which reads as follows:

"On October 8, 1931, the deposit balance of The Merion Title and Trust Company of Ardmore at Philadelphia National Bank was $134,014.83. When The Merion Title and Trust Company of Ardmore was taken possession of by the Secretary of Banking on October 28, 1931, the balance of The Merion Title and Trust Company of Ardmore at Philadelphia National Bank was $9,904.40, and during the interval between October 8, 1931, and October 26, 1931, the balance was never under $1,000 but on the said date The Merion Title and Trust Company of Ardmore was indebted to Philadelphia National Bank in the sum of $83,427.17, and the said deposit balance of The Merion Title and Trust Company at the said bank was thereupon appropriated by the said Philadelphia National Bank."

In the account filed, Mr. Weld's claim is listed as a "general claim". Exceptions were filed, claiming the sum of $1,000 as a "preferred claim".

So far as the relationship of The Merion and exceptant and the tracing of the latter's money are concerned, it is useless for us to travel over again the path so well worn by the feet of exceptants to this account. Therefore, without discussing, we hold:

That a fiduciary relationship existed between Mr. Weld and The Merion, that of principal and agent. In addition, the use of Mr. Weld's check, before Merion had a legal right to use it, constituted Merion a trustee ex maleficio of the amount of the check.

As it is admitted, that at all times from October 8, 1931, to the closing of the Trust Company, Merion had on deposit with Philadelphia National Bank a sum in excess of $1,000, and as the money of the exceptant has been definitely traced to this deposit, it follows that the exceptant is entitled to recapture his money from this fund, if the fund still exists: Mehler's Appeal, 310 Pa. 25 (1932). It appears, however, that the deposit of The Merion in Philadelphia National Bank

was appropriated by the latter bank, after the closing, and applied to the payment of the amount due by Merion to the Philadelphia National. It is contended by counsel for the accountant that this appropriation was proper and that the only fund from which the exceptant could claim a preference has been wiped out.

Whatever may have been the interpretation placed by the profession on certain prior decisions of the courts dealing with the tracing of trust funds, the latest pronouncement of the Supreme Court on the subject, Mehler's Appeal, supra, makes it plain that it is not the trust relationship, but the ability to trace the converted trust money to some specific fund, other than the general assets of the closed bank, which entitled the claimant to a preference. Says Justice Drew, in the opinion of the court (p. 28):

"But the right to a priority over other creditors in the distribution of the assets of the trust company is not conferred upon appellants by the mere conversion of their property; it depends, rather, upon their ability to show that property in the possession of the trust company at the time it closed its doors was obtained as a result of the conversion and is therefore subject to a trust in their favor. In other words, to be entitled to priority, appellants must trace the proceeds received from the conversion and identify them as contained in some specific fund or property in the possession of the trust company at the time it was taken over by the secretary of banking: Carmany's App., 166 Pa. 622; Com. v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372; Webb v. Newhall, 274 Pa. 135; Conneautville Bank's Assigned Est., 280 Pa. 545; Cobson's Est., 3 Pa. Superior Ct. 244; Lifter v. Earle Co., 72 Pa. Superior Ct. 173. See Miller's App., 218 Pa. 50. Once the proceeds have been traced into some fund, the entire fund is subject to the trust until the amount wrongfully placed in it has been repaid, and, consequently, appellants are entitled to that fund to the full extent of the proceeds of their property which went into it. It is not necessary that the very dollars received be identified, for it is the identity of the fund, not of the bank notes or pieces of coin that went into it, that controls: Farmers' & Mechanics' Bank v. King, 57 Pa. 202; Webb v. Newhall, supra; Vosburgh's Est., 279 Pa. 329; Conneautville Bank's Assigned Est., supra; Trestrail v. Johnson, 298 Pa. 388. However, the trust attaches only to the lowest balance in the fund at any time during the period between the placing of the proceeds therein and the closing of the trust company, for only to that extent can the proceeds be identified as contained in the fund as it presently exists."

As we see it, this means, translated into the facts of this case, that the exceptant must either obtain his preference from the deposit of The Merion in Philadelphia National Bank or be relegated to the status of a general creditor.

Was Philadelphia National Bank within its rights in appropriating The Merion's balance, after that institution had closed?

As we view it, this question is not before us. Philadelphia National Bank is not a party to this proceeding, and we cannot here adjudicate its rights in the matter. Any decision that we might render would have no binding effect on the appropriating bank. The drawing by Merion of a treasurer's check to the order of its mortgage department does not affect the question, as this was a mere bookkeeping transaction, and no funds were transferred by reason of it.

We are therefore of the opinion that the exceptions should be sustained and that the exceptant should be listed as entitled to a priority to the extent of $1,000 from the funds on deposit in Philadelphia National Bank at the time Merion closed. If these funds were lawfully appropriated by Philadelphia National Bank, then the exceptant becomes a general creditor. It is for the

exceptant, by appropriate action, to test the right of Philadelphia National Bank to take his money in payment of Merion's debt.

And now, June 2, 1933, the exceptions are sustained to the extent that the exceptant should be listed as entitled to a preference out of the deposit of The Merion Title & Trust Company in Philadelphia National Bank at the time of the closing of Merion, if said deposit has not been lawfully appropriated by said Philadelphia National Bank.