## In re Merion Title and Trust Company. No. 2.

*Russell J. Brownback,* for exceptant.

*Aaron S. Swartz, Jr.,* and *Desmond J. McTighe,* contra.

KNIGHT, J., June 2, 1933.—The Merion Title and Trust Company for a number of years operated what is known as a "mortgage pool". Customers of the trust company purchased certificates, bearing interest coupons. Payment of principal and interest of these certificates was guaranteed by the trust company. The money representing the principal of the certificates was invested by the trust company in mortgages taken in the name of the trust company as trustee, and segregated in the trust department of the company. As interest was paid on these mortgages, it was deposited in an account carried on the books of Merion as "Mortgage Trust Certificate Account, Louis D. Peterson, The Merion Title and Trust Company, Ardmore." The coupons were paid as they became due by the bank from an account called the "Coupon Account", and not from the funds of the mortgage certificate account, the money in this latter account being turned over periodically to the coupon account. When Merion closed, there was in the mortgage trust certificate account the sum of $5,693.75. In the account of the secretary, the mortgage trust certificate account was treated as a deposit, and the owner thereof given a depositor's status.

The Bryn Mawr Trust Company was appointed substituted trustee of the mortgage pool and has filed exceptions to the account, claiming that it is entitled to a preference and that the mortgage trust certificate account should not be classed as a general deposit. It is contended by counsel for the substituted trustee that the interest from the mortgages held in the pool was income from trust funds, and that Merion as the trustee had no authority to deposit this income

in its banking department and use it in the conduct of its business without setting aside earmarked collateral in its trust department for the protection of the income thus used, as required by the Act of April 11, 1929, P. L. 512.

It is further contended that inasmuch as no collateral was set aside in the trust department, as required by the act, the Merion, in thus violating the positive mandate of the law, raised a constructive trust in favor of the owners of the mortgage certificates and became a trustee ex maleficio of the amount of the deposit. As the Merion had at all times sufficient cash to cover the amount of the deposit, it is argued that the substituted trustee is entitled to receive the deposit in full, as an illegally converted and definitely traced trust fund.

We will assume for our present purpose that a trust relationship existed between the Merion in its ordinary corporate capacity and the owners of the mortgage certificates to the extent of the deposit in the mortgage trust certificate account. It requires more than the establishment of a fiduciary relationship, however, to entitle the cestui que trusts to a preference. In addition, they must be able to trace their funds to a specific fund or property. As we read it, this is the plain meaning of Mehler's Appeal, 310 Pa. 25, the latest pronouncement by the Supreme Court on the rule as to tracing trust funds among the assets of closed banks.

Here, there has been no attempt to break down the mortgage trust certificate account into its component interest payments. How the money was paid and where the actual funds were at the time of closing is unknown, and perhaps must always remain unknown. If the interest payments had all been made in currency, then the fact that there was always enough currency in the Merion to cover the deposit might be relevant, but this has not been shown, and we can only assume that the interest money was inextricably mixed with the general assets of the bank.

If the exceptant is to succeed, we would have to hold that any one who could show a fiduciary relationship existed between himself and the closed bank, and that there was always enough cash in the bank to cover his claim, would be entitled to a preference. This, as we see it, would be clearly against the opinion and decision of Mehler's Appeal, supra. The fact that the Merion had a separate account for the mortgage certificate trust interest is not controlling. This was a matter of bookkeeping for the convenience of the trust company. It is the existence of a specific fund and not the existence of a specific account that is the important thing.

Counsel for the exceptant relies upon Cameron v. Carnegie Trust Co., 292 Pa. 114, as controlling this case. The broad language used there might readily be interpreted as sustaining the exceptant's position, but, when the facts of the case are studied, it will be seen that they are in accord with the rule of Mehler's Appeal. In the Carnegie case the closed bank collected a note sent it for collection and mixed the *cash* received with its general funds, sending a check to the forwarding bank, drawn by Carnegie on Colonial Trust Company. Carnegie always had a balance in Colonial sufficient to cover the amount of this check. It will thus be seen that the money was traced to a specific fund, i. e., the deposit in Colonial. If we go back of the deposit in Colonial, we find that the Carnegie received the proceeds of the note in *cash* and that there was always sufficient cash in Carnegie to cover the claim. In either situation the money could be traced to a specific fund, either the deposit of Carnegie in Colonial or the currency in the vaults of Carnegie.

In the instant case, no such situation exists because no effort was made to show where the funds in the mortgage certificate trust account were derived. How then can it be said that the assets of Merion were increased by the amount

490

of this deposit; it may well have been that many of the payments of interest were made by checks drawn on Merion, as to which items the assets of the trust company would not be increased one penny.

We are basing our decision on the Mehler case, which, as we see it, requires the exceptions to be dismissed.

And now, June 2, 1933, the exceptions are dismissed.