## In re Northern Central Trust Company. No. 1

*William F. Leopold, Jr.*, for exceptants.
*Todd Daniel*, for Secretary of Banking.

LAMBERTON, J., July 18, 1933.—

### Findings of fact

1. On September 8, 1931, Charles S. Allen, the owner of premises 3444 D Street in the thirty-third ward, Philadelphia, made settlement for the sale of said premises to Mertzler G. Hunt and Martha M., his wife, at the office of Northern Central Trust Company, southwest corner of Broad Street and Erie Avenue, Philadelphia, and the title was insured for the purchasers by Northern Central Trust Company in its settlement no. 23508.

2. Reference to the figures of settlement discloses that the consideration for the sale was $1,800 and that Northern Central Trust Company withheld from the proceeds thereof (*a*) the sum of $1,328.21 to pay and discharge a certain mortgage in the principal sum of $1,500 secured on said premises, executed and delivered by said Charles S. Allen to Cliveden Building and Loan Association, dated September 20, 1929, and recorded in Philadelphia County in mortgage book no. 6664, page 500, etc.; and (*b*) the sum of $5 to be paid to William F. Leopold, Jr. the solicitor of Cliveden Building and Loan Association, to satisfy said mortgage of record.

3. By letter dated September 18, 1931, Northern Central Trust Company mailed to Charles B. Ivers, 1418 Walnut Street, Philadelphia, Pa., the secretary of Cliveden Building and Loan Association, two checks, both dated September 18, 1931, one no. 103334 in the sum of $1,328.21, payable to the order of "Cliveden B. & L.", to pay and discharge the balance due on said mortgage, and the other no. 103335 in the sum of $5, payable to the order of Wm. F. Leopold, in order to satisfy said mortgage of record.

4. Northern Central Trust Company was closed and taken possession of by the Secretary of Banking of the Commonwealth of Pennsylvania on September

28, 1931, before either of said checks was collected, and said sums of $1,328.21 and $5 have not yet been paid to Cliveden Building and Loan Association and William F. Leopold, Jr., respectively.

5. The funds necessary to complete the settlement were deposited by Mertzler G. Hunt and Martha M., his wife.

6. The said funds deposited for the purpose of the settlement were credited on the books of the company to an account entitled "settlement account."

7. The funds deposited for the purpose of said settlement were commingled with the general funds of the bank.

8. There was a balance on the books of the bank to the credit of the said settlement account from September 18, 1931, to the date of taking possession in excess of the amount needed to cover the two claims filed by exceptants.

9. There was at all times from September 18, 1931, to the date of taking possession, sufficient currency in the vaults of the trust company to cover the amount of the checks to exceptants and all similar outstanding liabilities as to which a preference is asserted by reason of an alleged trust.

10. The two checks covered by said exceptions were not presented to Northern Central Trust Company of Philadelphia until after the date when the Secretary of Banking took possession.

11. The Secretary of Banking filed his first and partial account on October 14, 1932, in which the claim of Cliveden Building and Loan Association in the sum of $1,328.21 and the claim of William F. Leopold, Jr., in the sum of $5, were listed as "general claims admitted" on pages 1468 and 1469 respectively.

12. Exceptions have been filed by Charles S. Allen, Cliveden Building and Loan Association and William F. Leopold, Jr., contending that said claims are entitled to a preferred status and to payment in advance of depositors.

## Discussion

The Northern Central Trust Company received the monies in question for a special purpose and was a trustee in regard thereto. If the monies can be traced and identified, exceptants are entitled to a preferred status: The Farmers' and Mechanics' National Bank v. King, 57 Pa. 202; Webb v. Newhall, Assignee, 274 Pa. 135; Trestrail, Admr., v. Johnson, Sheriff, 298 Pa. 388; Erie County et al. v. Lamberton et al., 297 Pa. 406; but if they cannot be traced and identified, they are general creditors only: Lebanon Trust & Safe Deposit Bank's Assigned Estate, 166 Pa. 622; Commonwealth v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372; Commonwealth ex rel v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378; Mehler's Appeal, 310 Pa. 25. The law was well stated in Commonwealth v. Tradesmen's Trust Co. (No. 1), supra, as follows: "The rule is that, if the identity of the fund or property can be traced, it will be subjected to the rights of the cestui que trust in its new form. No mere change of its state or form can divest it of the trust so long as it can be thus identified, but, whenever the means of identification fail, as where the property or money is mixed with a general mass or fund of the same description, the right to pursue it fails." (Page 376.)

In the case of Cameron v. Carnegie Trust Co., 292 Pa. 114, there is dicta which might lead one to believe that the age-old requirement of tracing and identification was to be relaxed, and Judge Ferguson followed what he believed to be the new rule there laid down in his decision in In re Susquehanna Title and Trust Company, 16 D. & C. 530. But the Supreme Court reaffirmed the old rule in its recent decision in Mehler's Appeal, supra; and served notice that the decision in the case of Cameron v. Carnegie Trust Company was not to be considered as establishing a contrary doctrine. Justice Drew there said: "But the right to a priority over other creditors in the distribution of the assets of the trust com-

pany is not conferred upon appellants by the mere conversion of their property; it depends, rather, upon their ability to show that property in the possession of the trust company at the time it closed its doors was obtained as a result of the conversion and is therefore subject to a trust in their favor. In other words, to be entitled to priority, appellants must trace the proceeds received from the conversion and identify them as contained in some specific fund or property in the possession of the trust company at the time it was taken over by the secretary of banking". (Page 28.)

And again (Page 30):

"Our recent decision in Cameron v. Carnegie Trust Co., 292 Pa. 114, far from doing away with the requirement that the claimant must trace the proceeds of the wrongful act to some fund to which the trust ex maleficio can attach, as appellants seem to contend, is fully in accord with the principles stated above."

While the doctrine that the property must be traced and identified is firmly established, in the case of money, the very dollars need not be traced. It is the identity of the fund, rather than of the coins or notes that counts: The Farmers' and Mechanics' National Bank v. King, supra; Webb v. Newhall, Assignee, supra; Trestrail, Admr., v. Johnson, Sheriff, supra; Mehler's Appeal, supra. For this reason, if dollars impressed with a trust go into an account and are there mingled with other trust monies and general funds, there is a sufficient tracing, and if the balance in the account is at all times sufficient to pay in full all monies deposited therein other than general funds, there is a sufficient identification: Webb v. Newhall, Assignee, supra; Mehler's Appeal, supra. .

The one question now involved is whether, on the agreed facts, there is a sufficient tracing and identification of the monies in question. Obviously there is not. There can be no tracing into the "settlement account", for that account was a mere book entry. It involved no specific transfer of monies whatever. But even if it had been an actual account, and the monies here involved went into that account, the exceptants could not prevail, for it is only agreed that the balance in this book account was at all times in excess of the amount needed to cover the two claims now involved. This would be a sufficient tracing, but not a sufficient identification under the decision of our Supreme Court in the case of Commonwealth ex rel v. Tradesmen's Trust Co. (No. 2), supra; where it was said: "when a trust company deposits in a common account funds belonging to various persons, it cannot be said that the mere fact of there being on deposit at all times sufficient to meet the claim of any particular customer of the bank, entitled that customer to claim it as against other claimants whose money also went into the same account. Claimant could not trace title to any particular part of the deposits and his claim can therefore rise no higher than the claim of others whose money was deposited in the same general fund." (Page 382.)

It is also agreed that, from the time when the monies in question were received by the bank until the Secretary of Banking took possession, there was at all times sufficient currency in the vaults of the trust company to cover the claims involved and all similar outstanding liabilities. This would remove the case from the adverse authority of Commonwealth ex rel v. Tradesmen's Trust Co. (No. 2), supra, if the monies in question could be traced into the currency in the vaults of the bank. The difficulty is that they cannot be so traced. We do not even know whether the funds were received by check or by cash. Settlements are usually made by check. If this settlement was made by check, what became of the check? It was probably sent to the clearing house and there offset against other accounts of the bank. At any rate there would be not one scintilla of evidence that it became cash in the vaults of the bank. If settlement was made in cash (and there is no evidence that it was), that cash must be traced into the

vaults of the bank. It may have been used to pay other claims of the settlement department, or may have been used in any of a thousand other ways so that it never reached the vaults of the bank. There is no evidence that it was cash, or, if cash, that it ever went into the vaults, and we are not permitted to guess. The burden is on the exceptants to trace the monies.· That burden has not been met.

The claim of exceptants is therefore not entitled to a preferred status, but is properly listed in the account as a general claim.

There is some question here as to whether the fund of $1,328.21 actually belongs to Charles S. Allen, or to Cliveden Building and Loan Association. That matter is not now before us for adjudication and we express no opinion in regard thereto.

### Conclusions of law

1. Northern Central Trust Company was a trustee of monies for the account of Charles S. Allen or Cliveden Building and Loan Association and William F. Leopold, Jr., in the respective sums of $1,328.21 and $5.

2. Said monies have not been traced and identified as part of any particular fund.

3. The claims of Charles S. Allen or Cliveden Building and Loan Association and William F. Leopold, Jr., in the respective sums of $1,328. 21 and $5 are not entitled to a preferred status, but are general claims payable after claims of depositors.

### Decree

And now, July 18, 1933, the exceptions of Charles S. Allen, Cliveden Building and Loan Association, and William F. Leopold, Jr., are dismissed.