Title Trust & Guarantee Company Case (No. 1).

130

Argued October 5, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Philip P. Sharkey,* with him *Charles Hasson, Horace M. Barba,* Special Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*J. C. Davies,* with him *Seymour S. Silverstone,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

On November 29, 1933, the secretary of banking took possession of the Title, Trust & Guarantee Company of Johnstown, Pa., hereafter referred to as the Title Com-

pany, filing his first and partial account in 1934. Four depositors who had been refused a preferred status filed exceptions to the account, and these exceptions were all upheld by the Court of Common Pleas of Cambria County. The Secretary of Banking appeals from the decree of that court, contending that these particular depositors are entitled to share only pro rata with the remaining depositors.

Resolution No. 4 of February 27, 1933, P. L. 1546, permitted banks to operate on a restricted basis upon the acceptance of terms to be imposed by the secretary of banking, these terms to include the segregation of new deposits in a separate fund and their investment in liquid assets.* The next day the Title Company participated in a resolution, effective at the close of business February 27th, to operate on such basis and promulgated in a newspaper their intention so to do and to keep all new deposits free of restriction. At this time the company was, and has been since, insolvent to the

---

* "Resolved, That the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, hereby authorize and direct the Secretary of Banking not to take possession of any banking institution under the supervision of the Department of Banking of this Commonwealth because of the decision of such institution not to meet in full its liabilities for deposits made prior to the passage of this resolution, or prior to any future date fixed by such institution, if such institution *shall have accepted such terms as the Secretary of Banking shall have imposed, which terms shall include the segregation of new deposits in a separate fund, available for withdrawal without limitation by the depositors making such deposits, and invested only in liquid assets.*

"Further resolved, That the General Assembly hereby declares its purpose forthwith to enact suitable legislation more fully to effectuate this resolution and to relieve the Secretary of Banking from all liability for complying with this resolution.

"Further resolved, That this resolution shall be effective immediately upon its approval by the Governor.

"Approved—The 27th day of February, A. D. 1933." (Italics ours.)

knowledge of its officers, having failed to have on deposit at all times their legal reserve. The Johnstown Water Company, one of the claimants, relying on the news item and on the assurances of the Title Company's vice-president that deposits would be free and unrestricted, made deposits in cash, totaling $3,555.65, on March 1st, 2nd and 3rd. Mrs. Campdon, as executrix and individual, made deposits about the same time and under the same circumstances. Some question is raised as to the character of the deposits of Mrs. Campdon. The evidence shows that deposits were made. Where an item of credit appears by the word "deposit" without indication of its nature, it will be considered as a money or cash deposit unless evidence appears to the contrary: see *Lloyd v. The West Branch Bank,* 15 Pa. 172, 175. These funds were not set aside but were mingled with the general funds of the bank.

Under these circumstances, the Title Company became a trustee ex maleficio of the cash deposited, holding the funds upon constructive trust. See *Christy v. Sill,* 95 Pa. 380, 385. It is a well established rule in this state and elsewhere that, when a bank accepts a deposit at a time when its officers know it is insolvent *(Corn Exchange National Bank v. The Solicitors' Loan & Trust Co.,* 188 Pa. 330), and mingles the deposit with its general funds, the bank is a trustee ex maleficio: *Cameron v. Carnegie Trust Co.,* 292 Pa. 114; *Lipschutz v. Phila. Saving Fund Society,* 107 Pa. Super. Ct. 481; Restatement, Restitution (1937), Section 166, comment b. The standard of care imposed upon banks and their officers is a peculiarly high one. They stand in a position of the most delicate character, being entrusted generally with the funds of the community. The wage earner and the business man are encouraged to deal with these institutions. Because of this the banker must act with the utmost fidelity and care. The mere opening of the banker's doors for business becomes a representation of solvency and of an ability properly to care for the funds

which have been entrusted to his keeping: *Corn Exchange National Bank v. The Solicitors' Loan & Trust Co.,* supra. Where a bank, known by its officers to be in a financially unsound position, induces the making of a deposit, a fraud has been committed upon the depositor, and this fraud supports a constructive trust. The representations made through the newspaper and the vice-president without subsequent segregation of the funds are only cumulative of the bank's misconduct.

However, to obtain a preference it is not enough to find that a constructive trust was imposed on a deposit. A preference is allowed in equity only where the claimant can identify his own property or its proceeds in the hands of the receiver. The funds must be traced into some specific property, security, fund or account which forms part of the assets for distribution. The funds here involved were pursued into the hands of the receiver according to the rules established for tracing trust funds. It is admitted that these deposits were mingled with other cash in the bank, and it was found as a fact that the amount of the bank's cash remained continually above the amount required to satisfy all similarly proven preferences from the date of the deposits until the assets of the bank were taken over by the Secretary. Although the history of the bank's cash account was not affirmatively proven, there is a presumption that the total of cash never fell below the amounts necessary to meet the obligations on those dates. When the bank was taken over by the receiver, the amount was in excess of that sought by these claimants, and the presumption is that the cash was at all times sufficient prior to that time. The burden is on the receiver to show that during the unexplained period the amount on hand was less than that turned over to him when the Title Company closed November 29th: 10 Zollman, Banks & Banking (1936), p. 150; *Farmers' Bank of White Plains v. Bailey,* 221 Ky. 55; *Hawaiian Pineapple Co. v. Browne,* 69 Mont. 140; *County of Grand Forks v. Baird,* 54 N. D.

315; *State v. First State Bank of Ripley,* 19 Tenn. App. 556. The decision of this court in an opinion by Mr. Justice STERN in the *Erie Trust Company's Case (No. 1),* 326 Pa. 198, where the law as to tracing of funds is clearly outlined, reiterates the elementary principle that a depositor tracing his fund into general cash need not prove that the very dollars he deposited have gone into the hands of the receiver.

With respect to the deposits of the Johnstown Water Company and Mrs. Campdon, the court below found that the tracing of their funds into the lowest balance "sufficiently identifies the new res to which the proof may attach." This finding of fact was not assigned as error, though the conclusion of law therefrom was. There could be no other conclusion of law where the fact thus found is unobjected to. It supports the conclusion. Moreover, the question of identification or tracing was not raised when the claimants demanded a preference. The secretary's position was that the "bank did not avail itself of the provisions of the Sordoni Act and did not receive and segregate the funds of claimant in accordance with the provisions of the Act of Assembly." It is apparent that during the trial of the case no deliberate attack was made by the receiver on the sufficiency of the tracing by claimants, a matter which relates solely to the right to preference under a trust ex maleficio and not priority under the Sordoni Act of March 8, 1933, P. L. 9, confirming the Resolution of February 27th.

In any event, these funds may be claimed as a preference under that statute. There was a substantial compliance with the terms of the Resolution and the Act when the bank's officer, with the officers of other banks, approved the Resolution of the General Assembly, advertised their intention to abide by it, notified depositors after February 27th that their deposits were on an unrestricted basis, and completed arrangements with the banking department for so doing. The mere fact that

the bank's resolution was not placed of record and that there was no later resolution to supply the approval of February 27th neither militates against claimants, nor destroys the character of the deposits made after February 27th, nor invalidates the claims for preference of those depositors who relied on the action of the bank's officers. The unrestricted deposits here involved were found by the court below not to have been formally separated from those that had preceded them.

The Sordoni Act required the segregation of the new deposits in a separate fund available for withdrawal without limitation by the depositors. While this may have required a physical separation by the officers, the fact that they were not separated will not adversely affect in the slightest the claim of these depositors who placed their money in the bank after February 27th. The intention of the Sordoni Act was to secure the fund to these depositors by requiring segregation. That intention will not be defeated by a deliberate failure of the bank to comply with the terms of the Act. The receiver finding the mingled mass in some form will, under the law, complete the separation for these depositors by taking all of the mass if necessary. The violation of the mandate to segregate might have resulted in the closing of the bank had the state banking department wished to take this step, but the depositors will not be permitted to suffer from this dereliction or breach of trust. The dominant purpose of the act is to secure to all depositors entitled to its protection full payment of their deposits. This purpose must prevail in spite of the bank's neglect to segregate the funds. All that is necessary under the Act is for claimant to place his deposit in the class provided for. It, with others, constitutes a special fund set apart for the benefit of the class. If the bank closed its doors, reimbursement to a depositor does not include tracing the deposit.

The claim of the Cambria Fuel Company is on a somewhat different basis and raises some different questions.

This company deposited a check for $24,887.79 on the Philadelphia National Bank for collection on February 27, 1933. A conditional deposit slip was issued showing that the check was taken for collection. As stated, the bank was insolvent and known to be so by its officers. The check was honored by the Philadelphia bank, which credited the individual account of the Title Company with the amount of the check on March 1st. The deposit became effective in the Title Company, so far as the Fuel Company was concerned, on that date, which was after the resolution of the legislature and the action of the bank officers.

It is now endeavored to tie this deposit into the balance of the Title Company in the Philadelphia bank and subject it to the vicissitudes of that deposit. What appellant now urges is that trust funds may, without the knowledge of the beneficiary, be deposited in foreign banks in the individual account of the trustee bank, the credit established thereby used for the general business of the home institution in relief of its own funds, and when the latter fails, the beneficiary is referred to the foreign bank where he finds that the home bank's account shows no balance. This would act as a stimulant of fraudulent practices in banking circles. True, the beneficiary may come in as a general creditor, or an ordinary depositor, depending on the circumstances, but in most cases that means but little. This check was received for collection. It was sent to a Philadelphia bank where it was paid. Must the bank in Philadelphia send the dollars called for to the remitting bank to complete the engagement and preserve the beneficiary's status which the latter had no hand in disturbing, or will the use of the money by the home bank in its general business and its conduct with the beneficiary be the equivalent of placing the money in the home bank? We cannot adopt the former view. There was in the Title Company's account in the Philadelphia bank after February 27th the sum of $40,441. Of this amount, approximately

$35,000 was drawn on either for deposits in the home bank or otherwise. The balance on August 2nd amounted to $5,706.34, and was applied by the Philadelphia bank to a debt due to it by the Title Company. The $35,000 without question became part of the funds of the home bank, used in its general business.

The home bank paid checks drawn against the deposit by the Cambria Fuel Company on its unrestricted account in the Trust Company bank between February 27th and March 1st, to the amount of over $8,000. This was recognition of the fact that the Title Company regarded the cash as being in that institution and corroborates the conclusion reached above.

The court below found that the deposit of the Fuel Company was received and commingled with the general funds of the bank at Johnstown. The receiver admits that the respective deposits were received, as each of the claimants contends; all were admitted to a "depository status." In view of these admissions, the identification and tracing of the funds, as discussed, were sufficient at law: *Erie Trust Company's Case (No. 1)*, supra. The finding of fact referred to above as to the identification and tracing of the funds of the two other deposits applies with equal force to the claim of the Fuel Company. As a practical matter and as a matter of banking custom, the collected funds and the credit established thereby are the equivalent of money in the home bank. This is in accord with the apt statement by Mr. Justice STERN in the *Erie Trust Company's Case (No. 1)*, supra, at p. 207: ". . . that the deposits of the trustee company in other banks are to be considered, together with the cash on hand and the cash items, as constituting a single fund, sufficiently differentiated from the company's general assets to meet the requirements of the law in regard to the tracing of trust property."

The question arises whether collected funds in Philadelphia may properly be considered as part of the general cash assets of the home bank, or whether the de-

positor's rights are limited by the deposit in the correspondent bank? There are some authorities which hold the latter, and our cases, *Mehler's Appeal*, 310 Pa. 25, 31, and *Lansdowne Bank & Trust Company's Case*, 323 Pa. 380, 388, would seem to have elements leaning in that direction. They, however, do not possess all the facts here narrated. It does not appear that the bank treated the item as cash, or that it allowed withdrawals against the item by the depositor. To the contrary, nothing appeared of record in *Mehler's Appeal*, supra, to indicate what had happened to the credit, and in the *Lansdowne Case*, recovery was allowed on a different theory, the release of collateral by the correspondent bank. We have differentiated the deposit here and shown how the Title Company had mingled it with its general funds and paid checks of the depositor drawn on this item, and we hold that the fund was in the home bank, rendering the general funds of that institution available for a preference on distribution. As was likewise held in the *Erie Trust Company's Case (No. 1)*, supra, where the depositors have traced the deposit into the general cash fund, they are entitled to the lowest level of cash, and cash items and credit balances in other banks when they show a conversion or a trust ex maleficio.

Moreover, the court below expressly found "that Trust Company did not for the benefit of claimant segregate, set apart in a separate account, or hold in its own vaults cash equivalent to the amount of the check so collected, nor did it invest equivalent cash in liquid assets, but the proceeds from such check were commingled with the general accounts and funds of the Trust Company and used by it in liquidating its other obligations." This is abundantly supported by evidence. Under this finding, without reference to tracing, the Fuel Company can properly claim under the Sordoni Act, in view of the fact that the deposit became effective March 1st, and our determination that the claims previously discussed

could not be penalized by the bank's failure to segregate. This claim, without identification and tracing, was properly allowed.

With this conclusion as to the three claimants, we are all satisfied that the decree of the court below was proper.

Decree affirmed at appellant's cost.